

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

20    CV1698-V

———————————————————

COUNSEL FINANCIAL HOLDINGS LLC

**NOTICE OF REMOVAL**

Plaintiff,

Civil Action No:

**v.**

New York State Supreme Court
Erie County
Index No: 813295/2020

SULLIVAN LAW, L.L.C.
ROBERT C. SULLIVAN
BIANCA T. SULLIVAN
JOHN R. BONDON
PARROT PROPERTIES, INC
ROBBA PROPERTIES, L.L.C. and
SOUTHSIDE INVESTMENT
COMPANY,

Defendants

Defendants.

———————————————————

**TO:   UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK**

Defendant, Robert C. Sullivan (hereinafter "Defendant"), representing himself *pro
se*, states as follows:

1.      Defendant hereby exercises his rights under the provisions of 28 U.S.C.

§1441 *et seq.* to remove this action from the Supreme Court of the State of New York,

County of Erie, where this action is currently pending, to the United States District Court

for the Western District of New York.

    **2.**      On October 21, 2020, Counsel Financial Holdings LLC (hereinafter "Plaintiff"), commenced this action against Defendants in the Supreme Court of the State of New York, County of Erie, by filing a Summons and Notice of Motion for Summary Judgment in Lieu of Complaint (with supporting affidavits) pursuant to New York Civil Practice Law and Rules §3213 in the Erie County Clerk's Office. Service of the Summons and Notice of Motion for Summary Judgment in Lieu of Complaint was made on Defendant on October 22, 2020. A copy of the Summons and Notice of Motion for Summary Judgment in Lieu of Complaint with supporting affidavits and Exhibits is attached hereto as **Exhibit A.**

    3.      Plaintiff alleges claim against Defendant for Defendant's alleged default under the terms of a certain Revolving Promissory Note dated February 5, 2019, and the terms of a Guaranty dated February 5, 2019. Plaintiff seeks Summary Judgment in Lieu of Complaint under New York Civil Practice Law and Rules §3213 based upon instruments for the payment of money only.

    4.      This Court has original jurisdiction over this civil action under 28 U.S.C. §§1332 and 1441. Defendants may remove this action to this Court on the basis of diversity jurisdiction because the action is between citizens of different states and the

amount in controversy is greater than $75,000.00. Plaintiff is a foreign limited liability company organized under the laws of the State of Delaware with its principal place of business located in the State of New York. Defendant is an individual resident of the State of Missouri residing at 3004 SW Coachlight Place, Lee's Summit, Missouri 64081. Plaintiff in this action seeks to recover the sum of $6,110,540.94 plus costs, fees, disbursements and reasonable attorneys fees.

5.      Pursuant to 28 U.S.C. §1441(a), this matter may properly be removed to the United States District Court for the Western District of New York in that this District embraces Erie County, where the matter is presently pending.

6.      All other Defendants to this action are residents of the State of Missouri; therefore, complete diversity exists permitting this removal.

7.      This Notice of Removal is filed within thirty (30) days of receipt by Defendants through service or otherwise of a copy of the initial pleading setting forth the claim for relief upon which the action is based, and no shorter period is applicable. Therefore, the conditions required by 28 U.S.C. §1446(b) are met.

8.      In accordance with 28 U.S.C. §1446(d), Defendant will promptly file this Notice of Removal with the Clerk of the Supreme Court of Erie County and serve it upon counsel for Plaintiff.

**WHEREFORE,** Defendant Robert C. Sullivan hereby requests that this action be removed to the United States District Court for the Western District of New York and placed on the docket for further proceedings as though this action had been originally instituted in this Court.

Dated:   Lee's Summit, Missouri
             November 17, 2020                           ROBERT C. SULLIVAN
                                                                  Appearing *pro se*


                                                                  *Isl*   Robert C. Sullivan
                                                                  Robert C. Sullivan
                                                                  Defendant appearing *pro se*
                                                                  3004 SW Coachlight Place,
                                                                  Lee's Summit, MO 64081
                                                                  (816) 806-2129
                                                                  Rsullivan.jd@gmail.com

TO: William F. Savino
       Attorneys for Counsel Financial Services, LLC
       1900 Main Place Tower
       Buffalo, New York 14202
       (716) 248-3210

## <u>INDEX TO STATE COURT RECORD</u>

1.    Exhibit A - Summons and Notice of Motion for Summary Judgment in Lieu of
       Complaint (with supporting affidavits and Exhibits) filed October 21, 2020.

# EXHIBIT A

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF** ERIE
-----------------------------------------------------------------x
COUNSEL FINANCIAL HOLDINGS LLC

                  Plaintiff/Petitioner,

        - against -                        Index No.813295/2020
SULLIVAN LAW, L.L.C., et al.

                  Defendant/Respondent.
-----------------------------------------------------------------x
**NOTICE OF ELECTRONIC FILING**
**(Mandatory Commencement Case)**
(Uniform Rule § 202.5-bb(a)(2)(v) and (vi))

**You have received this Notice because**:

      1) The Plaintiff/Petitioner, whose name is listed above, was required to file this case using the New York State Courts E-filing system ("NYSCEF"), and

      2) You are a Defendant/Respondent (a party) in this case.

- **If you are represented by an attorney:**
  Give this Notice to your attorney. (<u>Attorneys</u>: see "Information for Attorneys" pg. 2).

- **If you are not represented by an attorney:**
  **You will be served with all documents in paper and you must serve and file your documents in paper, unless you choose to participate in e-filing.**

  **I**f you choose to participate in e-filing, you **must** have access to a computer and a scanner or other device to convert documents into electronic format, a connection to the internet, and an e-mail address to receive service of documents.**

The **benefits of participating in e-filing** include:

        - serving and filing your documents electronically

        - free access to view and print your e-filed documents

        - limiting your number of trips to the courthouse

        - paying any court fees on-line (credit card needed)

**To register for e-filing or for more information about how e-filing works:**

- visit: www.nycourts.gov/efile-unrepresented or
- contact the Clerk's Office or Help Center at the court where the case was filed. Court contact information can be found at www.nycourts.gov

To find legal information to help you represent yourself visit www.nycourthelp.gov

**Information for Attorneys**
**(E-filing Commencement Documents is Mandatory)**

Attorneys representing a party must either consent or decline consent to electronic filing and service through NYSCEF for this case.

Attorneys registered with NYSCEF may record their consent electronically in the manner provided at the NYSCEF site. Attorneys not registered with NYSCEF but intending to participate in e-filing must first create a NYSCEF account and obtain a user ID and password prior to recording their consent by going to www.nycourts.gov/efile.

Attorneys declining to consent must file with the court and serve on all parties of record a declination of consent.

For additional information about electronic filing and to create a NYSCEF account, visit the NYSCEF website at www.nycourts.gov/efile or contact the NYSCEF Resource Center (phone: 646-386-3033; e-mail: nyscef@nycourts.gov.                                    ).

Dated: 10/21/2020

William F. Savino                                      1900 Main Place Tower
              Name                                              Address

Woods Oviatt Gilman LLP                               Buffalo, New York 14202
       Firm Name

                                                       (716) 248-3210
                                                               Phone

                                                       wsavino@woodsoviatt.com
                                                               E-Mail

To:    All Defendants

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ERIE

COUNSEL FINANCIAL HOLDINGS LLC,

Plaintiff,

v.

SULLIVAN LAW, L.L.C.,
ROBERT C. SULLIVAN,
BIANCA T. SULLIVAN,
JOHN R. BONDON,
PARROT PROPERTIES, INC.,
ROBBA PROPERTIES, L.L.C., and
SOUTH SIDE INVESTMENT COMPANY,

Defendants.

AMENDED NOTICE OF MOTION
FOR SUMMARY JUDGMENT
IN LIEU OF COMPLAINT

Index No.: 813295/2020

Upon the summons dated October 21, 2020, Plaintiff's Memorandum of Law in Support of its Motion for Summary Judgment in Lieu of Complaint, and the affidavit of Megan B. Payne sworn to on October 21, 2020, with exhibits attached thereto, Plaintiff will move this Court before the Hon. Timothy J. Walker, A.J.S.C., 25 Delaware Avenue, Buffalo, New York on November 18, 2020, at 9:30 a.m., on submission only. for an order pursuant to CPLR § 3213 directing the entry of judgment against each of the Defendants for $6,110,540.94 and for such further relief as the Court deems just and proper, plus the costs of this motion, disbursements and reasonable attorney fees, upon the grounds that this action is based upon instruments for the payment of money only which are now due and payable.

Take further notice that all answering papers must be served on the undersigned on or before seven (7) days prior to the date of the hearing in this matter.

DATED:     Buffalo, New York
              October 29, 2020

**WOODS OVIATT GILMAN LLP**

By:    <u>s/ William F. Savino</u>
            William F. Savino, Esq.
            *Attorneys for Plaintiff*
            1900 Main Place Tower
            Buffalo, New York 14202
            Telephone: (716) 248-3210
            wsavino@woodsoviatt.com

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ERIE

_____

COUNSEL FINANCIAL HOLDINGS LLC,
6400 Main Street, Suite 120
Williamsville, New York 14221

                            Plaintiff,         SUMMONS

v.

SULLIVAN LAW, L.L.C.,
1600 Baltimore Avenue
Kansas City, MO 64108

                                            Index No.:

ROBERT C. SULLIVAN,
3004 S.W. Coachlight Place
Lee's Summit, MO 64081

BIANCA T. SULLIVAN,
3004 S.W. Coachlight Place
Lee's Summit, MO 64081

JOHN R. BONDON,
11303 View High Drive
Kansas City, MO 64131

PARROT PROPERTIES, INC.,
3675 South Noland Road, Suite 115
Independence, MO 64055

ROBBA PROPERTIES, L.L.C., and
11303 View High Drive
Kansas City, MO 64131

SOUTH SIDE INVESTMENT COMPANY,
3675 South Noland Road, Suite 115
Independence, MO 64055

                              Defendants.

_____

To the above-named Defendants:

        You are summoned and required to submit to Plaintiff's attorneys, at their address stated

below, answering papers on this motion within the time provided in the attached Notice of Motion.

NYSCEF DOC. NO. 1
INDEX NO. 813295/2020
RECEIVED NYSCEF: 10/21/2020

If you fail to submit answering papers, summary judgment will be taken against you by default for the relief demanded in the Notice of Motion.

The action will be heard in the Supreme Court of the State of New York in and for the County of Erie. This action is brought in the County of Erie because it is Plaintiff's principal place of business at 6400 Main Street, Suite 120, Williamsville, New York 14221, and the parties have agreed that all disputes shall be resolved in New York State Supreme Court, Erie County.

DATED:     Buffalo, New York
           October 21, 2020

WOODS OVIATT GILAMN LLP

By:    s/ William F. Savino
       William F. Savino, Esq.
       *Attorneys for Plaintiff*
       *Counsel Financial Holdings LLC*
       1900 Main Place Tower
       350 Main Street
       Buffalo, New York 14202
       Telephone: (716) 248-3210
       wsavino@woodsoviatt.com

# REQUEST FOR JUDICIAL INTERVENTION

UCS-840
(rev 07/29/2019)

Erie Supreme COURT, COUNTY OF Erie

| | | **For Court Use Only:** |
|---|---|---|
| Index No: | Date Index Issued: | IAS Entry Date |

**CAPTION**   Enter the complete case caption. Do not use et al or et ano. If more space is needed, attach a caption rider sheet.

Counsel Financial Holdings LLC

| | Judge Assigned |

against                                                                                    Plaintiff(s)/Petitioner(s)

Sullivan Law, L.L.C., Robert C. Sullivan, Bianca T. Sullivan, John R. Bondon, Parrot Properties, Inc., Robba Properties, L.L.C., South Side Investment Company

| RJI Filed Date |

Defendant(s)/Respondent(s)

## NATURE OF ACTION OR PROCEEDING:  Check only one box and specify where indicated.

**COMMERCIAL**

- ☐ Business Entity (includes corporations, partnerships, LLCs, LLPs, etc.)
- ☒ Contract
- ☐ Insurance (where insurance company is a party, except arbitration)
- ☐ UCC (includes sales and negotiable instruments)
- ☐ Other Commercial (specify):

NOTE: For Commercial Division assignment requests pursuant to 22 NYCRR 202.70(d), complete and attach the COMMERCIAL DIVISION RJI ADDENDUM (UCS-840C)

**REAL PROPERTY:**  Specify how many properties the application includes:

- ☐ Condemnation
- ☐ Mortgage Foreclosure (specify):  ☐ Residential   ☐ Commercial
  Property Address
  NOTE: For Mortgage Foreclosure actions involving a one to four-family, owner-occupied residential property or owner-occupied condominium, complete and attach the FORECLOSURE RJI ADDENDUM (UCS-840F)
- ☐ Tax Certiorari - Section          Block:          Lot:
- ☐ Tax Foreclosure
- ☐ Other Real Property (specify):

**OTHER MATTERS**

- ☐ Certificate of Incorporation/Dissolution   (see NOTE in COMMERCIAL section)
- ☐ Emergency Medical Treatment
- ☐ Habeas Corpus
- ☐ Local Court Appeal
- ☐ Mechanic's Lien
- ☐ Name Change
- ☐ Pistol Permit Revocation Hearing
- ☐ Sale or Finance of Religious/Not-for-Profit Property
- ☐ Other (specify):

**MATRIMONIAL**

- ☐ Contested
  NOTE: If there are children under the age of 18, complete and attach the MATRIMONIAL RJI Addendum (UCS-840M)
  For Uncontested Matrimonial actions, use the Uncontested Divorce RJI (UD-13)

**TORTS**

- ☐ Asbestos
- ☐ Child Victims Act
- ☐ Environmental (specify):
- ☐ Medical, Dental or Podiatric Malpractice
- ☐ Motor Vehicle
- ☐ Products Liability (specify):
- ☐ Other Negligence (specify):
- ☐ Other Professional Malpractice (specify):
- ☐ Other Tort (specify):

**SPECIAL PROCEEDINGS**

- ☐ CPLR Article 75 (Arbitration)   (see NOTE in COMMERCIAL section)
- ☐ CPLR Article 78 (Body or Officer)
- ☐ Election Law
- ☐ Extreme Risk Protection Order
- ☐ MHL Article 9.60 (Kendra's Law)
- ☐ MHL Article 10 (Sex Offender Confinement-Initial)
- ☐ MHL Article 10 (Sex Offender Confinement-Review)
- ☐ MHL Article 81 (Guardianship)
- ☐ Other Mental Hygiene (specify):
- ☐ Other Special Proceeding (specify):

## STATUS OF ACTION OR PROCEEDING:  Answer YES or NO for every question and enter additional information where indicated.

| | YES | NO | |
|---|---|---|---|
| Has a summons and complaint or summons with notice been filed? | ☒ | ☐ | If yes, date filed   10/21/2020 |
| Has a summons and complaint or summons with notice been served? | ☐ | ☒ | If yes, date served |
| Is this action/proceeding being filed post-judgment? | ☐ | ☒ | If yes, judgment date: |

## NATURE OF JUDICIAL INTERVENTION:  Check one box only and enter additional information where indicated.

- ☐ Infant's Compromise
- ☐ Extreme Risk Protection Order Application
- ☐ Note of Issue/Certificate of Readiness
- ☐ Notice of Medical, Dental, or Podiatric Malpractice     Date Issue Joined
- ☒ Notice of Motion                                         Relief Requested   Judgment - Summary in Lieu of Complaint     Return Date
- ☐ Notice of Petition                                       Relief Requested                                                Return Date:
- ☐ Order to Show Cause                                      Relief Requested:                                               Return Date:
- ☐ Other Ex Parte Application                               Relief Requested:
- ☐ Poor Person Application
- ☐ Request for Preliminary Conference
- ☐ Residential Mortgage Foreclosure Settlement Conference
- ☐ Writ of Habeas Corpus
- ☐ Other (specify):

**RELATED CASES:** List any related actions. For Matrimonial cases, list any related criminal or Family Court cases. If none, leave blank. If additional space is required, complete and attach the RJI Addendum (UCS-840A).

| Case Title | Index/Case Number | Court | Judge (if assigned) | Relationship to instant case |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

**PARTIES:** For parties without an attorney, check the "Un-Rep" box and enter the party's address, phone number and email in the space provided. If additional space is required, complete and attach the RJI Addendum (UCS-840A).

| Un-Rep | Parties<br>List parties in same order as listed in the caption and indicate roles (e.g. plaintiff, defendant 3rd party plaintiff, etc.) | Attorneys and/or Unrepresented Litigants<br>For represented parties, provide attorney's name, firm name, address, phone and email. For unrepresented parties, provide party's address, phone and email. | Issue Joined<br>For each defendant, indicate if issue has been joined | Insurance<br>For each defendant, indicate insurance carrier, if applicable. |
|---|---|---|---|---|
| ☐ | Name: Counsel Financial Holdings LLC<br>Role(s): Plaintiff/Petitioner | WILLIAM SAVINO, WOODS OVIATT GILMAN LLP, 1900 Main Place Tower 350 Main Street, BUFFALO, NY 14202, 716-248-3200, wsavino@woodsoviatt.com | ☐ YES ☒ NO |  |
| ☒ | Name: Sullivan Law, L.L.C<br>Role(s): Defendant/Respondent | 1600 Baltimore Avenue, Kansas City, MO 64108 | ☐ YES ☒ NO |  |
| ☒ | Name: Sullivan, Robert C.<br>Role(s): Defendant/Respondent | 3004 S.W. Coachlight Place, Lees Summit, MO 64081 | ☐ YES ☒ NO |  |
| ☒ | Name: Sullivan, Bianca T.<br>Role(s): Defendant/Respondent | 3004 S.W. Coachlight Place, Lees Summit, MO 64081 | ☐ YES ☒ NO |  |
| ☒ | Name: Bondon, John R.<br>Role(s): Defendant/Respondent | 11303 View High Drive, Kansan City, MO 64131 | ☐ YES ☒ NO |  |
| ☒ | Name: Parrot Properties, Inc.<br>Role(s): Defendant/Respondent | 3675 South Noland Road, Suite 115, Independence, MO 64055 | ☐ YES ☒ NO |  |
| ☒ | Name: Robba Properties, L.L.C.<br>Role(s): Defendant/Respondent | 11303 View High Drive, Kansas City, MO 64131 | ☐ YES ☒ NO |  |
| ☒ | Name: South Side Investment Company<br>Role(s): Defendant/Respondent | 3675 South Noland Road, Suite 115, Independence, MO 64055 | ☐ YES ☒ NO |  |
| ☐ | Name:<br>Role(s) | | ☐ YES ☐ NO | |
| ☐ | Name:<br>Role(s) | | ☐ YES ☐ NO | |

**I AFFIRM UNDER THE PENALTY OF PERJURY THAT, UPON INFORMATION AND BELIEF, THERE ARE NO OTHER RELATED ACTIONS OR PROCEEDINGS, EXCEPT AS NOTED ABOVE, NOR HAS A REQUEST FOR JUDICIAL INTERVENTION BEEN PREVIOUSLY FILED IN THIS ACTION OR PROCEEDING.**

Dated:    10/21/2020

WILLIAM F. SAVINO
Signature

1643733
Attorney Registration Number

WILLIAM F. SAVINO
Print Name

This form was generated by NYSCEF

Case 1:21-cv-01088-KJM-DJM1/Document 1 Filed 11/20/20 Page 15 of 95

UCS-840C
3-2011

**SUPREME COURT OF THE STATE OF NEW YORK**

**COUNTY OF Erie**

———————————————————————— x

Counsel Financial Holdings LLC

**Index No:**

**RJI No. (if any):**

Plaintiff(s)/Petitioner(s)

-against-

Sullivan Law, L.L.C., Robert C. Sullivan, Bianca T. Sullivan, John R.
Bondon, Parrot Properties, Inc., Robba Properties, ...

Defendant(s)/Respondent(s)
———————————————————————— x

## COMMERCIAL DIVISION

## Request for Judicial Intervention Addendum

**COMPLETE WHERE APPLICABLE** [add additional pages if needed]:

**Plaintiff/Petitioner's cause(s) of action** [check all that apply]:

☒ Breach of contract or fiduciary duty, fraud, misrepresentation, business tort (e.g. unfair competition), or statutory and/or common law violation where the breach or violation is alleged to arise out of business dealings (e.g. sales of assets or securities; corporate restructuring; partnership, shareholder, joint venture, and other business agreements; trade secrets, restrictive covenants; and employment agreements not including claims that principally involve alleged discriminatory practices)

☐ Transactions governed by the Uniform Commercial Code (exclusive of those concerning individual cooperative or condominium un ts)

☐ Transactions involving commercial real property, including Yellowstone injunctions and excluding actions for the payment of rent only

☐ Shareholder derivative actions — without consideration of the monetary threshold

☐ Commercial class actions — without consideration of the monetary threshold

☐ Business transactions involving or arising out of dealings with commercial banks and other financial institutions

☐ Internal affairs of business organizations

☐ Malpractice by accountants or actuaries, and legal malpractice arising out of representation in commercial matters

☐ Environmental insurance coverage

☐ Commercial insurance coverage (e.g. directors and officers, errors and omissions, and business interruption coverage)

☐ Dissolution of corporations, partnerships, limited liability companies, limited liability partnerships and joint ventures — without consideration of the monetary threshold

☐ Applications to stay or compel arbitration and affirm or disaffirm arbitration awards and related injunctive relief pursuant to CPLR Article 75 involving any of the foregoing enumerated commercial issues — without consideration of the monetary threshold

**Plaintiff/Petitioner's claim for compensatory damages** [exclusive of punitive damages, interest, costs and counsel fees claimed]

4865852.48

**Plaintiff/Petitioner's claim for equitable or declaratory relief** [brief description]

Breach of Contract

**Defendant/Respondent's counterclaim(s)** [brief description, including claim for monetary relief]:

**I REQUEST THAT THIS CASE BE ASSIGNED TO THE COMMERCIAL DIVISION. I CERTIFY THAT THE CASE MEETS THE
JURISDICTIONAL REQUIREMENTS OF THE COMMERCIAL DIVISION SET FORTH IN 22 NYCRR § 202.70(a), (b) and (c).**

**Dated:**    10/21/2020

WILLIAM F. SAVINO
**SIGNATURE**

WILLIAM F. SAVINO
**PRINT OR TYPE NAME**

This form was generated by NYSCEF

1 of 2

**Caption Rider Sheet**

Plaintiff(s)/Petitioner(s)

vs.

Sullivan Law, L.L.C., Robert C. Sullivan, Bianca T. Sullivan, John R. Bondon, Parrot Properties, Inc., Robba Properties, L.L.C., South Side Investment Company

Defendant(s)/Respondent(s)

Guaranty (collectively, the "Collateral"), including, without limitation, the Collateral under the Security Agreement, or the failure to perfect any security interest in or assignment of any of the Collateral, or the amendment, release or termination of such security interest or assignment.

. . . .

(C) The waiver, compromise, settlement, release or termination of any or all of the obligations, covenants or agreements of Borrower under any Loan Document, of any Guarantor under any Loan Document, of any other guarantor of the Credit Facilities or any part thereof, or of any other party who has given collateral as security for the payment of the Credit Facilities or any part thereof.

(D) The failure to give notice to any Guarantor of the occurrence of an event of default under any Loan Document.

(E) The loss, release, sale, exchange, surrender or other change in any Collateral.

(F) The extension of the time for payment or performance or renewal of any of the Obligations.

(G) The modification or amendment (whether material or otherwise) of any obligation, covenant or agreement set forth in any Loan Document.

(H) The performance of, or the omission to perform, any of the actions referred to in any Loan Document.

(I) Any failure, omission or delay on the part of Lender to enforce, assert or exercise any right, power or remedy conferred on Lender in any Loan Document.

Guaranty § 2.2.

18. The Guarantors also made a number of waivers in the Guaranty. They included, among

other things, the following:

(A) Each Guarantor waives any and all rights that are or may become available to such Guarantor by statute or otherwise to require Lender to (i) proceed against Borrower; (ii) proceed against or exhaust any security held from Borrower; or (iii) pursue any other remedy in Lender's power whatsoever. Lender may, at its election, exercise any right or remedy it may have against each Guarantor or any Collateral now or hereafter held by or for the benefit of Lender . . . .

6

NYSCEF DOC. NO. 3                                                      RECEIVED NYSCEF: 10/21/2020

(B) **Waiver of Notices and Demands.** Each Guarantor waives all presentments, demands for performance, notices of nonperformance, protests, notices of protest, notices of dishonor, notices of default, and notices of acceptance of this Guaranty and of the existence, creation or incurring of new or additional Obligations.

(C) **Waiver of Defenses.** Each Guarantor waives any defense arising by reason of any disability or defense of Borrower or by reason of the cessation from any cause whatsoever of the liability of Borrower. *Each Guarantor waives any setoff, defense or counterclaim which Borrower or such Guarantor may have or claim to have against Lender.*

. . .

(E) **No Waiver; Remedies.** In addition to, and not in limitation of the waivers, no failure on the part of Lender to exercise, and no delay in exercising, any right hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right thereunder preclude any other or further exercise thereof or the exercise of any other right. The remedies herein provided are cumulative and not exclusive of any remedies provided by law.

(F) **Guarantors' Understanding With Respect to Waivers.** Each Guarantor warrants and agrees that each of the waivers set forth above is made with such Guarantor's full knowledge of its significance and consequences, and that under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any of such waivers is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law.

Guaranty § 2.3 (emphasis added).

19.    Under Section 2.4 of the Guaranty, the Guarantors agreed that the Guaranty is a "guaranty of payment and not of collection and each Guarantor hereby waive[s] the right to require that any action be brought first against Borrower, any other Guarantor or any other party, or to require any security, or to require that resort be made to any security or to any balance of any deposit account or credit on the books of Lender in favor of Borrower or any Guarantor." Guaranty § 2.4.

7

NYSCEF DOC. NO. 5

RECEIVED NYSCEF: 10/21/2020

20.    Pursuant to Section 3.1(A) of the Guaranty, any Guarantor's failure to "perform or observe any covenant contained" in the Guaranty constitutes an "Event of Default" thereunder. Guaranty § 3.1(A).

21.    Moreover, pursuant to Section 3.1(F) of the Guaranty, the "occurrence of an Event of Default under the Note or any other Loan Document" also constitutes an "Event of Default" under the Guaranty. Guaranty § 3.1(F).

22.    Further, under Section 3.3(B) of the Guaranty, "[n]o delay or omission to exercise any right or power accruing upon the occurrence of any Event of Default shall impair any such right or power or shall be construed to be a waiver thereof, but any such right or power may be exercised from time to time and as often as may be deemed expedient." Guaranty § 3.3(B).

## C.    AMENDMENTS TO THE INITIAL NOTE

### i.    Amendment No. 1

23.    On July 19, 2019, Lender, Borrower, and all of the Guarantors entered into Amendment No. 1 to the Note ("Amendment No. 1"), which increased the principal amount of the Note from $4.5 million to $5 million. Attached hereto as **Exhibit C** is a true and correct copy of Amendment No. 1.

24.    Amendment No. 1 also provided that the "Note, except as specifically modified hereby, and the Guaranty Agreement shall remain in full force in effect and the Borrower and each Guarantor hereby reaffirms all of their obligations under the Note, the Guaranty Agreement and any other documents executed and delivered by the Borrower and each Guarantor to the Lender in connection therewith." Amendment No. 1 § 9.

### ii.    Amendment No. 2

NYSCEF DOC. NO. 3

25.    On September 23, 2019, Lender, Borrower, and all of the Guarantors entered into Amendment No. 2 to the Note ("Amendment No. 2"), which increased the principal amount of the Note from $5.0 million to $5.25 million. Attached hereto as **Exhibit D** is a true and correct copy of Amendment No. 2.

26.    Amendment No. 2 also provided that the "Note, except as specifically modified hereby, and the Guaranty Agreement shall remain in full force in effect and the Borrower and each Guarantor hereby reaffirms all of their obligations under the Note, the Guaranty Agreement and any other documents executed and delivered by the Borrower and each Guarantor to the Lender in connection therewith." Amendment No. 2 § 9.

### iii.    Amendment No. 3

27.    On October 24, 2019, the Lender, Borrower, and all of the Guarantors entered into Amendment No. 3 to the Note ("Amendment No. 3"), which increased the principal amount of the Note from $5.25 million to $5.5 million. Attached hereto as **Exhibit E** is a true and correct copy of Amendment No. 3.

28.    Once more, Amendment No. 3 provided that the "Note, except as specifically modified hereby, and the Guaranty Agreement shall remain in full force in effect and the Borrower and each Guarantor hereby reaffirms all of their obligations under the Note, the Guaranty Agreement and any other documents executed and delivered by the Borrower and each Guarantor to the Lender in connection therewith." Amendment No. 3 § 9.

### iv.    Amendment No. 4

29.    On December 11, 2019, the Lender, Borrower, and all of the Guarantors entered into Amendment No. 4 to the Note ("Amendment No. 4"), which increased the principal amount

9

of the Note from $5.5 million to $6.0 million. Attached hereto as **Exhibit F** is a true and correct copy of Amendment No. 4.

30.    As with the other amendments. Amendment No. 4 provided that the "Note, except as specifically modified hereby, and the Guaranty Agreement shall remain in full force in effect and the Borrower and each Guarantor hereby reaffirms all of their obligations under the Note, the Guaranty Agreement and any other documents executed and delivered by the Borrower and each Guarantor to the Lender in connection therewith." Amendment No. 4 § 9.

## D.    BORROWER'S DEFAULT UNDER THE NOTE AND THE GUARANTORS' RESULTING DEFAULT UNDER THE GUARANTY

31.    Pursuant to the Note, Borrower borrowed the total principal amount of $4,865,852.48.

32.    Borrower, however, failed to pay CFH all monthly interest due and owing pursuant to Section 2(a)(i) of the Note on June 10, 2020, July 10, 2020, August 10, 2020, September 10, 2020 and October 10, 2020.

33.    As discussed above, Borrower's default in the "payment when due, whether by acceleration or otherwise, of any of the Outstanding Principal Amount or any interest or other amount payable pursuant to th[e] Note" constitutes an "Event of Default" thereunder. Note § 5(a)(i).

34.    Thus, Borrower's failure to pay CFH the monthly interest due under the Note constituted an "Event of Default."

35.    By virtue of Borrower's default under the Note, the Guarantors defaulted under the Guaranty.

36.    First, the Guarantors' failure to "perform or observe any covenant contained" in the Guaranty constitutes an "Event of Default" thereunder. Guaranty § 3.1(A).

37.    Under Section 2.1 of the Guaranty, the Guarantors guaranteed the payment of all principal, interest, fees, and other amounts due under the Note. However, as established above, Borrower failed to pay CFH the monthly interest due under the Note. Thus, each Guarantor breached their guarantee of payment of the same, an "Event of Default" under the Guaranty.

38.    Second, pursuant to Section 3.1(F) of the Guaranty, the "occurrence of an Event of Default under the Note or any other Loan Document" also constitutes an "Event of Default" under the Guaranty. Guaranty § 3.1(F).

39.    As set forth above, Borrower's failure to pay CFH the monthly interest due under the Note constituted an "Event of Default" under Section 5(a)(i) of the Note. Thus, each failure also constituted an "Event of Default" under the Guaranty.

40.    Pursuant to Section § 5(b) of the Note, CFH has exercised its right, after the occurrence or existence of an "Event of Default" under the Note, to declare the "Outstanding Principal Amount and all interest and other amounts payable pursuant to th[e] Note and remaining unpaid" "immediately due" by filing a CPLR § 3213 action against Borrower pursuant to the Note (and against the Guarantors pursuant to the Guaranty) seeking to recover the aforesaid unpaid amounts. Note § 5(b).

## E.    THE AMOUNTS DUE UNDER THE NOTE AND THE GUARANTY

41. As October 21, 2020, the total amount due and owing under the Note and the Guaranty is $6,110,540.94, including $4,865,852.48 in principal, $530,857.69 in Current Interest, $508,154.26 in Deferred Interest, $70,676.51 in Default Interest, and $135,000.00 in fees.

42. Attached hereto as **Exhibit G** is a true and correct copy of the October 21, 2020 Statement for Borrower (the "Statement"). The Statement provide a complete accounting of the Note, including the amount of (1) the principal loaned/borrowed; (2) the interest (including Current

11

# EXHIBIT A

## REVOLVING PROMISSORY NOTE
### Counsel Financial Holdings LLC

Delivered in Buffalo, New York

$4,500,000.00
February 5, 2019

For value received, **SULLIVAN LAW L.L.C.**, a limited liability company organized under Missouri law ("**Borrower**"), having its principal office located at 1600 Baltimore Ave., Kansas City, MO 64108, promises to pay to the order of **COUNSEL FINANCIAL HOLDINGS LLC**, a Delaware limited liability company ("**Lender**"), in lawful money of the United States and immediately available funds, any of the offices of Lender at 6400 Main Street, Suite 120, Williamsville, NY 14221 the principal amount of $4,500,000.00 or the Outstanding Principal Amount (as defined below) if less, together with all interest, fees, charges and costs and expenses payable under this Note, all at the times and in the manner provided in Section 2 below.

1. **DEFINITIONS.** For purposes of this Note:

    a. **"Advance Period"** means the period starting on the date of this Note and ending on February 28, 2021.

    b. **"Amortizing Period"** means the period starting immediately following the end of the Advance Period and ending on the Maturity Date.

    c. **"Budget"** means the budget attached hereto as **Exhibit A** or a budget for any subsequent year approved by Holder in its sole discretion.

    d. **"Collateral"** means the "Collateral" as defined in the Security Agreement or any other collateral securing from time to time the obligations of Borrower or any Principal Guarantor to Holder.

    e. **"Credit"** means a revolving credit facility made available by Lender to Borrower in the maximum principal amount equal to the Maximum Amount.

    f. **"Event of Default"** means "Event of Default" as defined in Section 5 hereof.

    g. **"Guarantor"** means, other than Borrower, any Person (i) who or that is now or hereafter liable, whether directly or indirectly or absolutely or contingently, for the payment of any of the Outstanding Principal Amount or any interest or other amount payable pursuant to this Note or (ii) any asset of whom or which now or hereafter directly or indirectly secures the payment of any of the Outstanding Principal Amount or any such interest or other amount.

    h. **"Holder"** means Lender or any transferee of this Note.

    i. **"LIBOR Rate"** means the one-month London Interbank Offered Rate, as fixed by the British Bankers Association for United States dollar deposits in the London interbank market at approximately 11:00 a.m. London, England time (or as soon thereafter as practicable) each day, as determined by Lender from any broker, quoting service or commonly available source utilized by Lender or a comparable rate or index selected by Lender should such London Interbank Offered Rate cease to be determined in such manner, cease to exist or otherwise become unavailable.

3

Initials       Initials       Initials

    j. **"Loan"** means any loan by Holder pursuant to the Credit.

    k. **"Loan Request"** means any oral (including, but not limited to, telephonic), written or other (including, but not limited to, facsimile or email) request for a Loan.

    l. **"Maturity Date"** has the meaning set forth in Section 2(a)(ii) of this Note.

    m. **"Maximum Amount"** means $4,500,000, US currency, as reduced in accordance with Section 2 (b) (ii) of this Note.

    n. **"Net Fees and Expenses"** means all legal fees and any other amounts paid or reimbursed to Borrower for Costs, and Expenses (as defined in the next sentence), resulting from any client representation or referral (whether contingent, hourly, fixed fee or other) after payment of all amounts owing to third party lawyers (other than employees or partners of Borrower) for assistance or referral with respect to such client representation. **"Costs and Expenses"** as used in the preceding sentence means all costs, disbursements, advances and other expenses, however denominated, of any type or character, whether an out-of-pocket expense or an internal cost or expense that is allocated by Borrower to specific clients, including without limitation, all court and filing fees, witness, expert and private investigators fees and expenses, search and research charges, and reproduction, meal, travel, mailing, fax, overtime, secretarial and delivery and courier charges, that are reimbursable or payable to Borrower.

    o. **"Outstanding Principal Amount"** means the outstanding principal amount of this Note from time to time.

    p. **"Principal Guarantor"** means each of Robert C. Sullivan and Bianca T. Sullivan.

    q. **"Person"** means (i) any individual, corporation, partnership, limited liability company, joint venture, trust or unincorporated association, (ii) any court or other governmental authority or (iii) any other entity, body, organization or group.

    r. **"Security Agreement"** means the Security Agreement by Borrower and by each of Robert C. Sullivan and Bianca T. Sullivan to Lender dated on or about the date hereof.

    s. **"Uniform Commercial Code"** means the Uniform Commercial Code as in effect from time to time in the State of New York.

2. **Payments.** The payment of principal, interest, fees and costs and expenses under this Note shall be subject to the following terms and conditions:

    a. Regularly Scheduled Payments of Interest and Principal.

        (i) *Monthly Interest.* Borrower shall pay monthly all interest that has accrued on the Outstanding Principal Amount through the last day of each calendar month (beginning with the calendar month containing the date of this Note), no later than the 10th day following the end of such calendar month, calculated at the rate and in the manner set forth in Section 2(d) below.

        (ii) *Principal Payment Schedule During Amortization Period.* In addition to the mandatory prepayments required under Section 2(b) below, Borrower shall pay the Outstanding Principal Amount during the Amortization Period in twenty-four (24) consecutive monthly installments commencing on March 1, 2021 and continuing on the same day of each month thereafter with the final payment due and payable on

4

Initials    Initials    Initials

February 1, 2023 (the "Maturity Date"). Borrower shall pay each monthly installment payable for a calendar month no later than the 10th day following the end of such calendar month.

(iii) *Monthly Principal Amount; Effect of Prepayment on Monthly Principal Amount.* Each such monthly principal installment payable during the Amortization Period shall be in an equal amount, sufficient to amortize in full in 24 installments the Outstanding Principal Amount determined as of the last day of the Advance Period. In the event of a mandatory prepayment or optional prepayment of this Note during the Amortization Period, the amount of each remaining monthly principal installment shall be recalculated so as to equal the level monthly amount sufficient to amortize the then Outstanding Principal Amount after giving effect to such mandatory or optional prepayment over the then remaining Amortization Period (and the term of this Note shall not be shortened).

b. **Mandatory Prepayments Based on Net Fees and Expenses.**

(i) *Payments Based on Net Fees and Expenses.* During the Advance Period and subject to the last sentence of this paragraph, Borrower shall pay to Holder within 3 business days of the receipt of any Net Fees and Expenses, an amount equal to 100% of such Net Fees and Expenses to be applied in the manner set forth below. During the Amortization Period and subject to the last sentence of this paragraph, Borrower shall pay to Holder the greater of (1) 30% of Net Fees and Expenses to be applied in the manner set forth below, within 3 business days of the receipt of any Net Fees and Expenses, or (ii) the monthly principal amount set forth in Section 2(a)(iii) above. Borrower shall continue to hold in Borrower's trust account any Net Fees and Expenses received until the amount equal to 100% of such Net Fees and Expenses is transmitted to Holder. Borrower, and each Principal Guarantor acting on behalf of Borrower, holds all Net Fees and Expenses received by Borrower subject to an express trust as further described in Section 13 and is required to remit 100% of Net Fees and Expenses to Lender under the circumstances described in Section 13.

(ii) *Application during the Advance Period; Reduction of Maximum Amount.* During the Advance Period, any payments based on Net Fees and Expenses received by Holder will be applied as a mandatory prepayment, first to prepay accrued and unpaid interest and fees and then to prepay the Outstanding Principal Amount.

(iii) *Application during the Amortization Period.* During the Amortization Period, each such payment received by Holder based on Net Fees and Expenses shall be applied first to offset Borrower's obligation to make the regularly scheduled monthly principal installment payable for the month in which Holder receives such payment (but such offset shall only be to the extent of such payment received by Holder and shall not affect Borrower's obligation to pay the balance of such regularly scheduled monthly principal installment). If 30% of Net Fees and Expenses in any month exceeds the monthly principal installment for such month, the excess will be applied as a mandatory prepayment of the Outstanding Principal Amount and shall not be applied to satisfy all or any portion of Borrower's obligation to make any monthly interest payment. Any such mandatory prepayment shall have the effect set forth in Section 2(a)(iii) on the remaining monthly principal installments payable during the Amortization period.

c. **Optional Prepayments.** Borrower shall have the option of prepaying, without penalty or premium, the Outstanding Principal Amount to Holder in full or part at any time and from time to time provided, that (a) the Outstanding Principal Amount must exceed $50,000 at all times during the first one hundred twenty (120) days after the date of this Note, and (b) upon prepaying the Outstanding Principal Amount in full, Borrower shall pay to Holder all interest and other amounts payable pursuant to this Note and remaining unpaid. Any such optional

5

Initials     Initials     Initials

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ERIE

COUNSEL FINANCIAL HOLDINGS LLC,

                Plaintiff,

V.

SULLIVAN LAW, L.L.C.,
ROBERT C. SULLIVAN,               Index No..
BIANCA T. SULLIVAN,
JOHN R. BONDON,
PARROT PROPERTIES, INC.,
ROBBA PROPERTIES, L.L.C., and
SOUTH SIDE INVESTMENT COMPANY,

                Defendants.

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT IN LIEU OF COMPLAINT

**WOODS OVIATT GILMAN LLP**
William F. Savino, Esq.
*Attorneys for Plaintiff*
1900 Main Place Tower
Buffalo, New York 14202

1

## PRELIMINARY STATEMENT

Plaintiff Counsel Financial Holdings LLC ("CFH" or "Lender") respectfully submits this memorandum of law in support of its motion for summary judgment in lieu of complaint against Defendants Sullivan Law, L.L.C. ("Borrower"), Robert C. Sullivan ("R. Sullivan"), Bianca T. Sullivan ("B. Sullivan"), John R. Bondon ("Bondon"), Parrot Properties, Inc. ("Parrot Properties"), ROBBA Properties, L.L.C. ("ROBBA Properties"), and South Side Investment Company ("South Side" and, collectively with R. Sullivan, B. Sullivan, Bondon, Parrot Properties, and ROBBA Properties, "Guarantors"), pursuant to CPLR § 3213.

As discussed in greater detail in the affidavit of Megan B. Payne ("Payne Aff."), CFH agreed to provide a loan to the law firm of Borrower of up to $4,500,000 (the "Initial Note"). The Initial Note was subsequently amended by Amendment No. 1 to the Note dated July 19, 2019 ("Amendment No. 1"), Amendment No. 2 to the Note dated September 23, 2019 ("Amendment No. 2"), Amendment No. 3 to the Note dated October 24, 2019 ("Amendment No. 3"), and Amendment No. 4 to the Note dated December 11, 2019 ("Amendment No. 4" and, collectively, the "Amendments"), each of which increased the principal amount of the Initial Note.

Pursuant to the Initial Note and the Amendments (collectively, the "Note"), CFH agreed to provide Borrower with a total loan of up to $6,000,000 and Borrower unconditionally agreed to repay to CFH, the principal amount borrowed thereunder with interest. In connection with the Note, the Guarantors irrevocably, absolutely and unconditionally (and jointly and severally) guaranteed the punctual payment and performance of the Note by executing a Guaranty of Payment and Performance on February 5, 2019 (the "Guaranty").

Borrower defaulted under the Note by failing to repay it in accordance with its terms, including failing to pay all monthly interest due and owing on June 10, 2020, July 10, 2020, August

2

10, 2020, September 10, 2020 and October 10, 2020. Due to Borrower's default under the Note, the Guarantors defaulted under the Guaranty.

Pursuant to Section 5(b) of the Note, "[u]pon or at any time or from time to time after the occurrence of any Event of Default...the Outstanding Principal Amount and all interest and other amounts payable pursuant to this Note and remaining unpaid shall, at the sole option of [CFH] and without any notice, demand, presentment or protest of any kind (each of which is knowingly, voluntarily, intentionally and irrevocably waived by Borrower), become immediately due."

As of October 21, 2020, Borrower and Guarantors, who are jointly and severally liable under the Guaranty, owe CFH $6,110,540.94.

Significantly, the Guarantors waived any and all defenses, counterclaims, and setoffs that he, she, it and they may have had to his, her or its liability under the Guaranty for the amounts due and owing under the Note. Such waivers have been consistently upheld by New York courts.

For these reasons, CFH's motion for summary judgment in lieu of complaint against Borrower and the Guarantors pursuant to the Note and the Guaranty should be granted in its entirety.

## STATEMENT OF FACTS

The Court is respectfully referred to the accompanying Affidavit of Megan B. Payne in Support of Plaintiff's Motion for Summary Judgment in Lieu of Complaint ("Payne Aff.") for a complete recitation of the facts relevant to CFH's motion for summary judgment in lieu of complaint against Borrower and the Guarantors, all of which are incorporated herein by reference. *See* Payne Aff. ¶¶ 1-43.

3

## LEGAL ARGUMENT

CPLR 3213 provides that "[w]hen an action is based upon an instrument for the payment of money only or upon any judgment, the plaintiff may serve with the summons a notice of motion for summary judgment and the supporting papers in lieu of a complaint." The primary purpose of the statute providing for summary judgment in lieu of complaint is to provide a speedy and effective means of securing a judgment on a claim that is presumptively meritorious. *See Wagner v Cornblum*, 36 A.D.2d 427, 428 (4th Dep't 1971). Where the liability of the defendant is based upon the terms of an instrument, "a formal complaint is superfluous, and the delay incidental to waiting for an answer and then moving for summary judgment is needless." *Holmes v Allstate Ins. Co.*, 33 A.D.2d 96, 99 (1st Dep't 1969) (internal quotations omitted).

Further, summary judgment in lieu of a complaint under CPLR 3213 is proper to enforce a personal guaranty executed by the defendant where the plaintiff establishes the existence of the guaranty and defendant's failure to make payments according to its terms. *See Nissan Motor Acceptance Corp. v Scialpi*, 83 A.D.3d 1020 (2d Dep't 2011); *Verela v. Citrus Lake Dev., Inc.*, 53 A.D.3d 574 (2d Dep't 2008); *Juste v. Niewdach*, 26 A.D.3d 416, 417 (2d Dep't 2006).

In the instant matter, CFH made a loan to Borrower in the principal amount of $6,000,000 as evidenced by the Initial Note, the Amendments, and documents executed in connection therewith. *See* Payne Aff., at Ex. A, Ex. C, Ex. D, Ex. E and Ex. F.

As part of this transaction, the Guarantors, jointly and severally, guaranteed absolutely and unconditionally the payment and performance of the Note by executing the Guaranty. *See id.*, at Ex. B.

4

The Note required Borrower to make certain payments and perform certain obligations, and the Borrower has defaulted per the terms of the Note by failing to make those payments. *See id.* at ¶ 32.

By virtue of the aforesaid default, the Guarantors are jointly and severally liable for all of the debt outstanding pursuant to Paragraph 3.1(F) of the Guaranty. *See id.*, at Ex. B.

Thus, based on the foregoing, the total amount due to CFH from Borrower and the Guarantors as of October 12, 2020 is $6,110,540.94, as set forth in the Payne Affidavit at ¶ 41.

Consequently, this Court should grant CF's motion for summary judgment in lieu of complaint pursuant to CPLR 3213.

## CONCLUSION

Plaintiff CFH respectfully requests an Order of the Court granting its motion for summary judgment in lieu of complaint, awarding judgment in the amount of $6,110,540.94, together with expenses, costs, disbursements, and reasonable attorneys' fees, and any other and further relief the Court deems just and proper.

DATED:     Buffalo, New York
           October 21, 2020

### WOODS OVIATT GILMAN LLP

By:     s/ William F. Savino
        William F. Savino, Esq.
        *Attorneys for Plaintiff*
        1900 Main Place Tower
        350 Main Street
        Buffalo, New York 14202
        Telephone: (716) 248-3210
        wsavino@woodsoviatt.com

5

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ERIE

---

COUNSEL FINANCIAL HOLDINGS LLC,

|  |  |
|---|---|
| | Plaintiff, |
| v. | |

SULLIVAN LAW, L.L.C.,
ROBERT C. SULLIVAN,
BIANCA T. SULLIVAN,
JOHN R. BONDON,
PARROT PROPERTIES, INC.,
ROBBA PROPERTIES, L.L.C., and
SOUTH SIDE INVESTMENT COMPANY,

                        Defendants.

AFFIDAVIT IN SUPPORT
OF MOTION FOR
SUMMARY JUDGMENT
IN LIEU OF COMPLAINT

Index No.:

---

| | |
|---|---|
| STATE OF NEW YORK | ) |
| | ) ss.: |
| COUNTY OF ERIE | ) |

MEGAN B. PAYNE, being duly sworn, deposes and says:

1.      I am the Vice President and Chief Operating Officer of Counsel Financial Holdings

LLC ("CFH" or "Lender"). As such, I have personal knowledge of the facts and circumstances set

forth below.

2.      I make this affidavit in support of a Motion for Summary Judgment in Lieu of

Complaint pursuant to CPLR § 3213, based on the fact that the instruments at issue herein are

based solely upon the payment of money.

**A.      LOAN TO SULLIVAN LAW, L.L.C.**

3.      In 2019, Counsel Financial Holdings LLC ("CFH" or "Lender") agreed to provide

a loan to the law firm of Sullivan Law L.L.C. ("Borrower") to fund, among other things, the

1

Borrower's law firm operating expenses and interest payments under the Note (as defined in Paragraph 4).

4.    In connection therewith, Borrower executed a Revolving Promissory Note dated February 5, 2019 (the "Initial Note), wherein CFH agreed to provide Borrower with a loan of up to $4,500,000. The Initial Note was subsequently amended by Amendment No. 1, Amendment No. 2, Amendment No. 3 and Amendment No. 4 (collectively, the "Amendments"), each Amendment increasing the principal amount of the Initial Note, as further detailed in Section C below. Pursuant to the Initial Note and the Amendments (collectively, the "Note"), CFH agreed to provide Borrower with a total loan of up to $6,000,000 and Borrower unconditionally agreed to repay to CFH, the principal amount borrowed thereunder with interest. Specifically, the Note, as amended, states:

> For value received, SULLIVAN LAW L.L.C. . . . ., promises to pay to the order of COUNSEL FINANCIAL HOLDINGS LLC . . . ., in lawful money of the United States and immediately available funds, . . . the principal amount of $6,000,000 or the Outstanding Principal Amount (as defined below) if less[2], together with all interest, fees, charges and costs and expenses payable under this Note, all at the times and in the manner provided in Section 2 below.

Attached hereto as **Exhibit A** is a true and correct copy of the Initial Note.

5.    Pursuant to Section 2(a)(i) of the Note, Borrower agreed to "pay monthly all interest that has accrued on the Outstanding Principal Amount through the last day of each calendar month (beginning with the calendar month containing the date of this Note), no later than the 10th day following the end of such calendar month, calculated at the rate and in the manner set forth in Section 2(d) below." Note § 2(a)(i).

---

[1] Attached to and a part of the Note is an Allonge also dated February 9, 2019, that gives notice that the Note is subject to a security interest granted by CFH to Bank of America, N.A.
[2] The "Outstanding Principal Amount" is defined in the Note as the "outstanding principal amount of this Note from time to time." Note § 1(o).

2

6.      Section 2(d)(i) provides that interest under the Note is calculated on the "basis of a 360 day year for the actual number of days of each year (365 or 366, as applicable), on the Outstanding Principal Amount for each day from and including the date of this Note to but not including the date the Outstanding Principal Amount is paid in full." Note § 2(d)(i).

7.      Pursuant to Section 2(d)(ii) of the Note, interest "will accrue on the Outstanding Principal Amount at the rate of 18% per annum...provided that 12% interest shall be due and payable monthly [("Current Interest")] and 6% interest shall be deferred [("Deferred Interest")]." Note § 2(d)(ii).

8.      Moreover, if "on the first business day of any calendar month, the LIBOR Rate equals more than 2.5% per annum, the interest rate applicable on each day during such calendar month will equal (A) 18% per annum, plus (B) the excess of the LIBOR Rate on such first business day of such calendar month over 2.5%." Note § 2(d)(iii).

9.      Finally, "[o]n and after the occurrence of an Event of Default, the interest rate applicable to this Note shall equal the rate per year that is the lesser of (i) 24.9% or (ii) the maximum rate permitted by applicable law ('Default Interest')," such "Default Interest shall be payable during any period of default and up to and including the date of the next payment made after such period of default," and such "Default Interest, and not any rate set by statute, shall be computed in any entry of judgment pertaining to this Note, and further, shall be paid subsequent to the entry of such judgment, and until actual satisfaction of said judgment." Note § 2(d)(iv).

10.     Pursuant to Section 2(f) of the Note, "[i]f any principal, interest or other amount (including mandatory payments), payable pursuant to this Note is not paid by the date it becomes due, Borrower shall pay on demand by [Lender], a monthly late charge for each month or part

3

NYSCEF DOC. NO. 3

RECEIVED NYSCEF: 10/21/2020

thereof that such overdue payment remains unpaid of the greater of (i) 5% of the overdue payment or (ii) $50." Note § 2(f).

11.     Additionally, under Section 2(h) of the Note, on demand by [Lender], Borrower shall pay "each cost and expense (including, but not limited to, the reasonable fees and disbursements of counsel, whether retained for advice, litigation or any other purpose) incurred by [Lender] in endeavoring to (i) collect any of the Outstanding Principal Amount or any interest or other amount payable pursuant to this Note, (ii) preserve or exercise any right or remedy of [Lender] pursuant to this Note, or (iii) preserve or exercise any right or remedy of [Lender] relating to any Collateral including the payment of unpaid insurance premiums, taxes, assessments or other obligations." Note § 2(h).

12.     Borrower's default in the "payment when due, whether by acceleration or otherwise, of any of the Outstanding Principal Amount or any interest or other amount payable pursuant to this Note" constitutes an "Event of Default" thereunder. Note § 5(a)(i).

13.     Moreover, "[u]pon or at any time or from time to time after the occurrence or existence of any Event of Default . . . . the Outstanding Principal Amount and all interest and other amounts payable pursuant to this Note and remaining unpaid shall, at the sole option of [Lender] and without any notice, demand, presentment or protest of any kind (each of which is knowingly voluntarily, intentionally and irrevocably waived by Borrower), become immediately due." Note § 5(b).

## B.    GUARANTY OF LOAN

14.     Contemporaneously with the execution of the Note, Robert C. Sullivan ("R. Sullivan"), Bianca T. Sullivan ("B. Sullivan"), John R. Bondon ("Bondon"), Parrot Properties, Inc. ("Parrot Properties"), ROBBA Properties, L.L.C. ("ROBBA Properties"), and South Side

4

Investment Company ("South Side" and, collectively with R. Sullivan, B. Sullivan, Bondon, Parrot Properties, and Robba Properties, "Guarantors"), executed a Guaranty of Payment and Performance dated February 5, 2019 (the "Guaranty"). Attached hereto as **Exhibit B** is a true and correct copy of the Guaranty.

15.    Pursuant to the Guaranty, the Guarantors "irrevocably, absolutely and unconditionally (and jointly and severally . . . ) guarantee[d] to Lender, the punctual payment and performance of the Obligations as hereinafter defined." Guaranty § 2.1.

16.    "Obligations" is defined under the Guaranty as "all the present and future monetary and other obligations of Borrower to Lender, of whatever nature or character, and whether absolute or contingent, arising under the Note and all of the other Loan Documents, including, without limitation any obligation of Borrower to pay any principal, interest, fee, charge, cost or expense under the Loan Documents, whether or not any such amounts arise or are accrued after the commencement of any bankruptcy or other insolvency proceeding and whether or not allowed as a claim in any such proceeding." Guaranty § 2.1.

17.    Pursuant to Section 2.2 of the Guaranty, the Guaranty is "[u]nconditional" and "shall remain in full force and effect until the Obligations are irrevocably paid in full and the Loan Documents are terminated, irrespective of any interruptions in the business relationships of Borrower or any Guarantor with Lender. No Guarantor's obligation hereunder shall be affected, modified or impaired by any state of facts or the happening from time to time of any event, including, without limitation, any of the following, whether or not with notice to or the consent of such Guarantor or any other Guarantor." Guaranty § 2.2. The state of facts/events listed thereunder include, among other things:

> (A) The invalidity, irregularity, illegality or unenforceability of, or any defect in, any Loan Document or any collateral security for the Credit Facilities or any

5

prepayment made during the Amortization Period shall have the effect set forth in Section 2(a)(iii) on the remaining monthly principal installments payable during the Amortization Period.

d. **Interest Rates and Calculation.**

   (i) *Calculation of Interest.* Interest shall be calculated on the basis of a 360 day year for the actual number of days of each year (365 or 366, as applicable), on the Outstanding Principal Amount for each day from and including the date of this Note to but not including the date the Outstanding Principal Amount is paid in full.

   (ii) *Interest Rate.* Interest will accrue on the Outstanding Principal Amount at the rate of 18% per annum, and except as set forth below, provided that 12% interest shall be due and payable monthly and 6% interest shall be deferred.

   (iii) *Increase In Interest Rate.* If on the first business day of any calendar month, the LIBOR Rate equals more than 2.5% per annum, the interest rate applicable on each day during such calendar month will equal (A) 18% per annum, plus (B) the excess of the LIBOR Rate on such first business day of such calendar month over 2.5%.

   (iv) *Default Interest.* On and after the occurrence of an Event of Default, the interest rate applicable to this Note shall equal the rate per year that is the lesser of (i) 24.9% or (ii) the maximum rate permitted by applicable law ("Default Interest"). Default Interest shall be payable during any period of default and up to and including the date of the next payment made after such period of default. Default Interest, and not any rate set by statute, shall be computed in any entry of judgment pertaining to this Note, and further, shall be paid subsequent to the entry of such judgment, and until actual satisfaction of said judgment. The judgment shall include both the action and the obligation itself. In such event, the Default Interest rate shall continue up through and including all foreclosure proceedings and proceedings for payment of monies, including but not limited to surplus money proceedings and shall be computed in the entry of any judgment, and further, subsequent to the entry of any judgment, and until actual satisfaction of this Note and said judgment.

   (v) *Maximum Applicable Rate.* In no event shall such interest be payable at a rate in excess of the maximum rate permitted by applicable law. Any amount payable under this Note that is interest, or that is treated as interest, and that would cause such maximum rate to be so exceeded shall be deemed to have been a mistake and automatically canceled. If any such amount that causes the maximum rate to be exceeded is received by Holder, such amount shall be refunded to Borrower or applied to the Outstanding Principal Amount, as determined by Holder. It is the intention of Lender and Borrower that interest not be payable at a rate in excess of such maximum rate.

   (vi) *One Month's Advance Interest.* Borrower must maintain on account with Holder at all times one month's advance payment of interest. The required amount of such advance payment will initially be determined based on the Outstanding Principal Amount on the date of the first Loan under this Note. Thereafter, the amount of the required advance payment to be held by Lender will be adjusted so that it equals one month's advance interest on the Outstanding Principal Amount determined as of the date of the date of the most recent Loan under this Note or the last day of the most recently ended calendar month, and Borrower will be required to pay any increase in the required amount to Holder (or if there is a reduction in the required amount, Holder will apply any excess held by Holder against other amounts then or thereafter payable by Borrower to Holder). Holder does not pay any interest on such advance payment amount or

6

Initials    Initials    Initials

provide any discount in consideration of such advance payment. Any such advance payment will be commingled with Holder's other funds. Holder will hold such advance payment on account, and may apply any such advance payment in such manner as it determines to any amount owing to Holder that is not paid when due or to the final payment to be made to Holder under this Note.

e. **Electronic Funds Transfer.** At all times during the Advance Period and thereafter until all amounts payable under this Note have been irrevocably paid in full, Borrower shall maintain an authorization for electronic funds transfer by Holder at a bank and from an account designated by Borrower and reasonably acceptable to Holder for payments under this Note. Lender may authorize an electronic funds transfer from such designated account of Borrower for any amount that is not paid to Holder when due and payable under this Note.

f. **Late Payment Charges.** If any principal, interest or other amount (including mandatory prepayments), payable pursuant to this Note is not paid by the date it becomes due, Borrower shall pay on demand by Holder, a monthly late charge for each month or part thereof that such overdue payment remains unpaid of the greater of (i) 5% of the overdue payment or (ii) $50.

g. **Special Delinquency Charges.** If any document or information required to be provided to Holder under this Note is not delivered when due or within 10 business days following request from Holder, Borrower shall pay a late charge of $250 per month until such documentation has been provided to Holder. If after the scheduling of an audit, Borrower (i) cancels the audit within five (5) business days prior to the scheduled date or (ii) fails at the audit to provide Holder's representative with the necessary books and records to permit Holder's representative to complete the audit, Borrower shall promptly reimburse Holder for the costs associated with such cancelled or failed audit, including all costs incurred by Holder with respect to its representative such as compensation and travel expenses, in an amount equal to the greater of $500 or actual costs.

h. **Expenses.** On demand by Holder, Borrower shall pay each cost and expense (including, but not limited to, the reasonable fees and disbursements of counsel, whether retained for advice, litigation or any other purpose) incurred by Holder in endeavoring to (i) collect any of the Outstanding Principal Amount or any interest or other amount payable pursuant to this Note, (ii) preserve or exercise any right or remedy of Holder pursuant to this Note or (iii) preserve or exercise any right or remedy of Holder relating to any Collateral including the payment of unpaid insurance premiums, taxes, assessments or other obligations.

3. **LOANS.**

a. **Timing and Procedure.** At any time during the Advance Period, Borrower may make a Loan Request, which Request shall be irrevocable, that specifies (i) the amount requested as the principal amount of the Loan, (ii) the purpose of the loan (which must comply with (b) below), and (iii) the business day of Holder on which such Loan is requested to be made. Notwithstanding anything contained in this Note to the contrary, commencing March 1, 2021, Borrower shall not be permitted to make any further Loan Requests under this Note.

b. **Purpose of Loans.** All Loan Requests shall be for the sole purpose of funding the operating expenses of Borrower or interest payments under this Note, not to exceed the amount set forth in the Budget for any calendar month without the written consent of Holder. Borrower shall not obtain or use the proceeds of any Loan for any purpose other than for law firm purposes, that is, for working capital of Borrower including payments to any Principal Guarantor, but only to the extent any such payment to any Principal Guarantor or other use of the loan proceeds would not violate the covenant concerning the Budget set forth in Section 4 hereof. Borrower covenants that no Loan proceeds shall be used by Borrower for other than a business or commercial purpose of Borrower. No Loan Requests may be made to fund the activities or operations of any Guarantor or any third

7

Initials      Initials      Initials

party entity. The Borrower further acknowledges, warrants and represents to, and agrees with, the Lender that the Lender has made no representation to the Borrower regarding the adequacy of the Budget or of any loans or advances made to the Borrower pursuant to this Note for purposes of conducting the Borrower's legal practice or other business operations.

c. **Minimum Unused Credit Availability.** Borrower shall maintain unused credit availability at all times under this Note in an amount equal to not less than 60 days' interest based on the Outstanding Principal Amount on the later of the date of the most recent Loan under this Note or the last day of the most recently ended calendar month during the term of this Note as contemplated by Section 2(d)(vii) of this Note.

d. **Holder's Discretion.** The decision whether to honor such Loan Request and make such Loan shall be in the sole discretion of Holder. Without limiting Lender's discretion to fund or not fund any Loan, no Loan shall be made with respect to any principal amount prepaid until at least one (1) business day after the date of such prepayment.

e. **Reliance by Holder.** Holder may treat as made by Borrower and rely upon, and Borrower shall be bound by, any Loan Request that Holder in good faith believes to be valid and to have been made in the name or on behalf of Borrower by any officer, manager, member, partner or other individual authorized to act on behalf of Borrower, and Holder shall not incur any liability to Borrower or any other Person as a direct or indirect result of honoring such Loan Request and making such Loan.

f. **Limitation on Outstanding Principal Amount.** Borrower shall not at any time permit, and Holder shall not at any time be obligated to permit, the Outstanding Principal Amount to exceed the Maximum Amount. If the Maximum Amount is exceeded at any time, Borrower shall forthwith repay to Lender the amount of any such excess.

g. **Schedule of Advances or Loan Account.** There shall be payable as principal pursuant to this Note only so much of the Maximum Amount as shall have been advanced by Holder as a Loan or Loans and is outstanding. Holder shall set forth on a schedule or loan account (including, but not limited to, any schedule or loan account maintained in computerized records) annotations evidencing (a) the date and principal amount of each Loan, (b) the date and amount of each payment applied to the Outstanding Principal Amount and (c) the Outstanding Principal Amount after each Loan and each such payment. Each such annotation shall, in the absence of manifest error, be conclusive and binding upon Borrower. No failure by Holder to make and no error by Holder in making any annotation on such schedule or loan account shall affect Borrower's obligation to repay the principal amount of each Loan, Borrower's obligation to pay interest on the outstanding principal amount of each Loan or any other obligation of Borrower to Holder pursuant to this Note or otherwise.

4. **COVENANTS.** So long as any obligations are owing to Holder under this Note, Borrower and each Guarantor, to the extent applicable to such Guarantor, shall comply with the following covenants:

   a. **Reporting Obligations:** Borrower shall provide or cause to be provided to Holder, and each Guarantor shall provide to Holder to the extent relating to such Guarantor, within the time periods indicated below each of the following:

      (i) *Tax Returns.* Copies of Borrower's and each Guarantor's annual federal tax returns no later than the earlier of (A) three days after filing or (B) the 15th day of the tenth month of each fiscal year for the immediately preceding fiscal year;

      (ii) *Case Status Report; Fee Sharing and Referral Agreements.* Updated complete and accurate case and status list with respect to the clients and cases of Borrower and a copy of each fee sharing agreement or

8

Initials     Initials     Initials

referral agreement and any amendments thereto, with any law firm or lawyer (including a lawyer that may be a shareholder, member or employee of the Borrower) with respect to any case or matter described in such list, at least once each calendar quarter;

(iii) *Bank Statements.* Copies of monthly bank statements of Borrower from each of its bank accounts (operating and trust) and monthly settlement report no later than the 10th day of each month;

(iv) *Financial Statements.* Current updated financial statements of Borrower, compiled by an independent third party accountant, not later than the 15th day of each calendar quarter in the same form delivered to Holder on or before execution of this Note;

(v) *Personal Financial Statements.* A current updated personal financial statement for each of Robert C. Sullivan, John R. Bondon and Bianca T. Sullivan and a current updated financial statement for each of Parrot Properties, Inc., South Side Investment Company and ROBBA Properties L.L.C. each to be delivered on or before April 15th of each year in the form completed by such Guarantor and delivered to Holder on or before execution of this Note;

(vi) *Malpractice and Life Insurance.* Evidence of coverage under a current malpractice insurance policy for Borrower, and of continuing coverage under any life insurance policy that has been assigned as part of the Collateral, on each anniversary date of coverage, and copy of any notice of cancellation, revocation or non-renewal of any malpractice insurance or any such life insurance policy within five (5) business days after receipt thereof by Borrower or any Principal Guarantor;

(vii) *Notice of Certain Material Events or Material Change.* Notice of any tax audit with respect to Borrower or any Guarantor, any investigation by any governmental agency or regulatory body affecting Borrower or any Guarantor, any litigation commenced against Borrower or any Guarantor, or any material change in the business, clients or prospects of Borrower, in each case as soon as Borrower or any Guarantor is aware, or should be aware, of such audit, investigation, litigation or change;

(viii) *Default Notices.* A copy of any default notice or other notice of the existence of facts or circumstances that with the passage of time will constitute such a default, under any obligation of Borrower to any party, in each case immediately following receipt by Borrower;

(ix) *Other Information.* Any documentation or information reasonably requested by Holder that relates to the business or assets of Borrower or such Guarantor, in each case promptly following each request by Holder.

b. **Accuracy and Access to Books and Records.** Borrower shall maintain accurate books and records regarding its financial condition, including, but not limited to, aged listings of accounts payable and accounts receivable, all expenses and disbursements, business operations, and the status and condition of the Collateral; and shall grant Holder access thereto at any time upon reasonable notice to inspect and audit such books, records, and accounts, and to make copies thereof.

c. **Life Insurance.** Borrower shall cause to be maintained in effect life insurance on the life of each of Robert C. Sullivan and Bianca T. Sullivan in a minimum amount equal to $4,500,000 with the ownership assigned to Holder and that is subject to an effective collateral assignment to Holder at all times while this Note is outstanding.

d. **Minimum Collateral Coverage.** Borrower shall not permit legal fees collectible by Borrower from the Collateral as estimated by Holder at any time to be less than **EIGHT TIMES** the Outstanding Principal Amount

9

Initials     Initials     Initials

Case 1:20-cv-01708-JLS Document 1-101 Filed 11/20/20 Page 41 of 95

plus interest on this Note. In making such estimate, Holder may take into consideration, among other matters, Holder's assessment of the actual client files of Borrower from time to time and any law, judicial decision, administrative order, or professional ethics opinion that may affect the rights of law firms to sue clients for the collection of legal fees or expenses, and will reduce such estimate by the amount of any indebtedness or obligation of Borrower having priority over the collection rights of Holder.

e. **Minimum Net Worth Requirement.** Robert C. Sullivan shall refrain from selling, gifting, transferring or otherwise disposing of assets or incurring indebtedness that reduces the personal net worth (including his or her indirect interest in Borrower's assets and his or her interest in joint assets) to less than $13,500,000.

f. **Restriction on Additonal Indebtedness.** Borrower and each Principal Guarantor shall not incur or assume, on or after the date of this Note, any indebtedness or liability (including any indebtedness or liability to any member or shareholder of Borrower or any Principal Guarantor) other than indebtedness that is:

   (i) owing to Lender;

   (ii) constituting unsecured normal trade debt incurred upon customary terms in the ordinary course of Borrower's or any Principal Guarantor's business or in the case of any Principal Guarantor that is an individual, ordinary consumer debt;

   (iii) arising from the endorsement in the ordinary course of Borrower's or any Principal Guarantor's business of any check or other negotiable instrument for deposit or collection;

   (iv) secured by a Permitted Lien as defined in the Security Agreement; or

   (v) incurred with the prior written consent of Holder which consent may require that the proceeds of such financing be used to repay this Note in whole or in part and that repayment of such financing be subordinated to repayment of the indebtedness due to Holder on terms acceptable to Holder.

g. **Restriction on Liens.** Borrower and each Principal Guarantor shall refrain from creating, assuming or suffering to exist any mortgage, security interest, judgment or lien (including tax liens) on any of its assets now or hereafter acquired, other than a Permitted Lien or a security interest relating to consumer debt.

h. **No Other Law Practice.** Borrower and each Principal Guarantor shall not own or hereafter acquire, without the prior written consent of Holder, an ownership interest, either direct or indirect, in any entity engaged in the practice of law other than Borrower.

i. **License to Practice Law.** Borrower and each Principal Guarantor shall not permit any license to practice law held by Borrower or such Principal Guarantor, as the case may be, to be suspended or revoked.

j. **No Payments Beyond Budget.** Borrower shall not pay any operating expense, including but not limited to salary, draws, bonuses etc. made to Robert C. Sullivan or Bianca T. Sullivan or any family member, related party or other affiliate, which exceeds the amount set forth for such expense in the Budget. Notwithstanding the foregoing, Borrower may make quarterly distributions to Robert C. Sullivan in amounts sufficient to cover his estimated tax payments arising from his membership interest in Borrower as reasonably calculated by Borrower and approved by Holder, such approval not to be unreasonably withheld.

k. **Trusts.** Each of Parrot Properties, Inc., South Side Investment Company and ROBBA Properties L.L.C. (together, the "Corporate Guarantors") are owned in whole or in part by certain revocable living trusts (the

10

Initials     Initials     Initials

"Trusts"). Borrower and each Guarantor hereby certify to Lender that as of the date hereof that, (i) John Bondon is the trustee (the "Trustee") of each Trust with full power and authority to sign on behalf of each Trust, (ii) the trust agreements previously provided to Lender are true, complete and accurate copies of each and every trust agreement, document or instrument executed by the Trustee in connection with the ownership of the Corporate Guarantors and that no other trust agreements, documents, instruments, amendments or restatements thereof exist, (iii) there has been no transfer of assets from the Trusts and (iv) no change in the financial condition of the Trusts.

l. **Fee Sharing and Referral Agreements**. Without the prior written approval of Lender, Borrower shall not enter into a fee sharing or referral agreement unless such agreement is entered into in the ordinary course of business and on an arms-length basis and shall not modify any fee sharing or referral agreement in any way that would reduce the fees or other amounts payable to Borrower thereunder or that would otherwise prejudice Lender.

5. **EVENTS OF DEFAULT AND REMEDIES.**

   a. **Events of Default**. The existence or occurrence of any of the following events or circumstances shall each constitute an "Event of Default" under this Note:

      (i) *Failure to Pay Amounts due Under this Note*. Borrower defaults in the payment when due, whether by acceleration or otherwise, of any of the Outstanding Principal Amount or any interest or other amount payable pursuant to this Note; or

      (ii) *Breach of Covenants or Other Obligations to Holder*. Borrower or any Guarantor fails to comply with any of the applicable covenants in Section 4 of this Note or defaults in the payment or performance when due of any other obligation to Holder, whether now existing or hereafter arising or accruing and whether under this Note or any other present or future agreement with Holder; or

      (iii) *Obligations Owing to Third Parties*. Borrower or any Principal Guarantor defaults in the payment or performance of any obligation owing by Borrower or any Principal Guarantor to any third party or there exists a default or event of default under any agreement evidencing such obligation owing to such third party; or

      (iv) *Obligations Owing to the Government*. Borrower or any Principal Guarantor defaults in the payment of any taxes or other charges owing to any governmental entity; or

      (v) *Cessation of Business and Other Material Events*. Borrower or any Principal Guarantor is dissolved, ceases to exist, participates or agrees to participate in any merger, consolidation or other absorption, assigns or otherwise transfers or disposes of a majority of his, her or its assets, makes or permits what might be a fraudulent transfer or fraudulent conveyance of any of his, her or its assets, becomes insolvent (however such insolvency is evidenced), generally fails to pay his, her or its debts as they become due, fails to pay, withhold or collect any tax as required by applicable law, suspends or ceases its business or has served, filed or recorded against him, her or it or any of his, her or its assets any judgment, order or award of any court, other governmental authority or arbitrator or any lien; or

      (vi) *Death or Incompetency*. Borrower or any Principal Guarantor dies or becomes incompetent; or

      (vii) *Termination or Revocation*. Borrower or any Guarantor purports to terminate his, her or its obligations pursuant to any guaranty or other agreement with or for the benefit of Holder; or

11

Initials    Initials    Initials

(viii) *Insolvency*. Borrower or any Guarantor has any receiver, trustee, custodian or similar Person for him, her or it or any of his, her or its assets appointed (whether with or without his, her or its consent), makes any assignment for the benefit of creditors, admits in writing his, her or its inability to pay debts generally as they become due, or commences or has commenced against him, her or it any bankruptcy or insolvency proceeding or any formal or informal proceeding for the dissolution, liquidation or winding up of the affairs of or the settlement of claims against him, her or it; or

(ix) *Representations and Warranties*. Any representation or warranty heretofore made to Lender or hereafter made to Holder, or any financial statement heretofore provided to Lender or hereafter provided to Holder, by or on behalf of Borrower or any Guarantor, proves, as of the date thereof, to have been incorrect or misleading in any material respect, or before the execution and delivery to Lender by Borrower of this Note, there occurred and was not disclosed to Lender any material adverse change in any information disclosed in any such representation or warranty or in any such financial statement so provided; or

(x) *Change in Management or Control*. There occurs any change in the management of, or the beneficial ownership of any stock of or other ownership interest in, Borrower that is, in the opinion of Holder, adverse to its interest and is not corrected to its full satisfaction within 30 days after it gives to Borrower a notice that it considers such change adverse to its interest; or

(xi) *Collateral Value*. There occurs any change in the value of the Collateral or Borrower's or any Principal Guarantor's ownership interest in the Collateral, that is, in the opinion of Holder, adverse to its interest and is not corrected to its full satisfaction within 10 days after Holder gives to Borrower a notice that Holder considers such change adverse to its interest; or

(xii) *Other Loan Document Default*. There occurs or exists any event or condition of default under any guaranty or any security agreement or other writing evidencing or relating to any Collateral or the Credit.

b. **Acceleration.** Upon or at any time or from time to time after the occurrence or existence of any Event of Default other than, with respect to Borrower, an Event of Default described in clause (viii) above (an "Insolvency Event"), the Outstanding Principal Amount and all interest and other amounts payable pursuant to this Note and remaining unpaid shall, at the sole option of Holder and without any notice, demand, presentment or protest of any kind (each of which is knowingly, voluntarily, intentionally and irrevocably waived by Borrower), become immediately due. Upon the occurrence or existence of, with respect to Borrower, any Insolvency Event, the Outstanding Principal Amount and all such interest and other amounts shall, without any notice, demand, presentment or protest of any kind (each of which is knowingly, voluntarily, intentionally and irrevocably waived by Borrower), automatically become immediately due.

6. **CHANGES AND WAIVERS; PARTIALLY INVALIDITY.** No course of conduct pursued, accepted or acquiesced in, and no oral, written or other agreement or representation made, by or on behalf of Holder in the future will change this Note or waive any right or remedy of Holder under or arising as a result of this Note. Any change in this Note or waiver of any right or remedy of Holder under or arising as a result of this Note must be made in a writing signed by or on behalf of Holder. Whenever possible, each provision of this Note shall be interpreted in such manner as to be effective and valid under applicable law. If, however, any such provision shall be prohibited by or invalid under such law, it shall be deemed modified to conform to the minimum requirements of such law, or, if for any reason it is not deemed so modified, it shall be prohibited or invalid only to the extent of such prohibition or invalidity without the remainder thereof or any other such provision being prohibited or invalid.

7. **GOVERNING LAW.** This Note shall be governed by and construed, interpreted and enforced in accordance with the internal laws of the State of New York, without regard to principles of conflicts of law or to the law of any other

12

Initials    Initials    Initials

jurisdiction.

8. CONSENT TO JURISDICTION. AS PART OF THE CONSIDERATION FOR NEW VALUE RECEIVED AND REGARDLESS OF ANY PRESENT OR FUTURE DOMICILE OR PRINCIPAL PLACE OF BUSINESS OF BORROWER OR HOLDER, BORROWER HEREBY CONSENTS AND AGREES THAT ANY CLAIMS OR DISPUTES BETWEEN BORROWER AND HOLDER PERTAINING TO THIS NOTE OR TO ANY MATTER ARISING OUT OF OR RELATED TO THIS NOTE SHALL BE BROUGHT ONLY IN THE SUPREME COURT OF THE STATE OF NEW YORK LOCATED IN THE COUNTY OF ERIE WHICH SHALL BE DEEMED TO BE THE COURT OF SOLE AND EXCLUSIVE VENUE FOR THE BRINGING OF ANY LEGAL OR EQUITABLE ACTION; PROVIDED, HOWEVER, HOLDER MAY AT ITS OPTION, COMMENCE ANY ACTION, SUIT OR PROCEEDING IN ANY OTHER APPROPRIATE FORUM OR JURISDICTION TO OBTAIN EQUITABLE RELIEF OR TO ENFORCE ANY JUDGMENT OR ORDER OBTAINED BY HOLDER AGAINST BORROWER, TO ENFORCE ANY OTHER RIGHT OR REMEDY UNDER THIS NOTE, OR TO OBTAIN ANY OTHER RELIEF DEEMED APPROPRIATE BY HOLDER. BORROWER EXPRESSLY SUBMITS AND CONSENTS IN ADVANCE TO SUCH JURISDICTION IN ANY ACTION OR SUIT COMMENCED IN THE SUPREME COURT OF THE STATE OF NEW YORK LOCATED IN ERIE COUNTY, AND BORROWER HEREBY WAIVES ANY OBJECTION WHICH BORROWER MAY HAVE BASED UPON LACK OF PERSONAL JURISDICTION, IMPROPER VENUE OR FORUM NON CONVENIENS AND HEREBY CONSENTS TO THE GRANTING OF SUCH LEGAL OR EQUITABLE RELIEF AS IS DEEMED APPROPRIATE BY SUCH NEW YORK COURT. BORROWER REPRESENTS AND WARRANTS THAT IT HAS REVIEWED THIS CONSENT TO JURISDICTION PROVISION WITH ITS LEGAL COUNSEL, AND HAS MADE THIS WAIVER KNOWINGLY AND VOLUNTARILY.

9. WAIVER OF TRIAL BY JURY. BORROWER KNOWINGLY, VOLUNTARILY, INTENTIONALLY AND IRREVOCABLY WAIVES EACH RIGHT BORROWER MAY HAVE TO A TRIAL BY JURY WITH RESPECT TO (A) THE CREDIT, ANY LOAN OR COLLATERAL, THIS NOTE OR ANY OTHER WRITING HERETOFORE OR HEREAFTER EXECUTED IN CONNECTION WITH THE CREDIT OR ANY LOAN OR COLLATERAL, (B) ANY TRANSACTION ARISING OUT OF OR OTHERWISE RELATING TO THE CREDIT, ANY LOAN OR COLLATERAL, THIS NOTE OR ANY SUCH OTHER WRITING OR (C) ANY NEGOTIATION, ADMINISTRATION, PERFORMANCE OR ENFORCEMENT OF THE CREDIT, ANY LOAN OR COLLATERAL, THIS NOTE OR ANY SUCH OTHER WRITING.

10. SERVICE OF PROCESS. PROCESS ON BORROWER IN ANY SUIT, ACTION OR PROCEEDING ARISING OUT OF THIS NOTE WILL BE DEEMED TO HAVE BEEN GIVEN WHEN GIVEN IN ANY ONE OF THE FOLLOWING WAYS: (A) PERSONALLY DELIVERED, (B) TWO (2) BUSINESS DAYS AFTER DEPOSITED WITH A NATIONALLY RECOGNIZED OVERNIGHT COURIER, CHARGES PREPAID, THAT ROUTINELY ISSUES RECEIPTS, OR (C) FOUR (4) BUSINESS DAYS AFTER SENT BY CERTIFIED MAIL BY THE UNITED STATES POSTAL SERVICE, POSTAGE PREPAID, RETURN RECEIPT REQUESTED, ADDRESSED TO BORROWER AT THE ADDRESS SET FORTH AT THE BEGINNING OF THIS NOTE. Such service shall be deemed in every respect effective service of process upon Borrower and shall, to the fullest extent permitted by law, be taken and held to be valid personal service upon Borrower. Nothing in this Section shall affect Holder's right to serve process in any other manner permitted by law. Borrower may add additional addresses or change its address for purposes of service of process by giving 10 days' prior written notice of such change to Holder in accordance with the notice provisions of the Security Agreement.

11. SECURITY AGREEMENT. Repayment of this Note is secured by the Collateral in accordance with the terms of the Security Agreement and any other agreements relating to the Collateral.

13

Initials        Initials        Initials

12. **SOLVENCY.** On the date hereof, and immediately prior to and after giving effect to the borrowing represented by this Note and the use of the proceeds thereof, Borrower's assets will exceed its liabilities and Borrower will be solvent, will be able to pay its debts as they mature and will have capital sufficient to carry on its business as then constituted.

13. **BORROWER'S FIDUCIARY OBLIGATION TO LENDER/EXPRESS TRUST.** All Net Fees and Expenses received by Borrower are subject to an express trust in favor of Lender. Borrower and any Principal Guarantor that acts on behalf of Borrower, holds all Net Fees and Expenses as a fiduciary for the benefit of Lender and any use of any Net Fees and Expenses that is not authorized by Lender is a defalcation by Borrower and any such Principal Guarantor so acting on Borrower's behalf. Before maturity of this Note (by acceleration or otherwise), and only after Borrower has timely remitted to Lender the applicable amount of Net Fees and Expenses as required by Section 2(b) hereof, Lender authorizes Borrower to use any such Net Fees and Expenses for its operations in the ordinary course of business and in a manner consistent with the Budget unless Lender has notified Borrower after the occurrence and during the continuation of an Event of Default that Lender is revoking such authorization. **After maturity of this Note (whether by acceleration or otherwise) or if Lender so revokes the foregoing authorization following the occurrence and during the continuance of an Event of Default, Borrower shall remit to Lender 100% of Net Fees and Expenses for application to Borrower's obligations under this Note in such manner as Lender shall determine.**

Dated: February 5, 2019

SULLIVAN LAW L.L.C.

By: _____
Robert C. Sullivan, Managing Member

### BORROWER ACKNOWLEDGMENT FOR NOTE

STATE OF MISSOURI
                                          : SS.
COUNTY OF Jackson

On the 5th day of February in the year 2019 before me, the undersigned, a notary public in and for said state, personally appeared Robert C. Sullivan personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he (she) executed the same in his (her) capacity as Managing Member of Sullivan Law L.L.C., and that by his (her) signature on the instrument, the individual, or other person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

KENDRA SMITH
Notary Public - Notary Seal
STATE OF MISSOURI
Jackson County
My Commission Expires July 30, 2022
Commission # 14748644

14

_____    _____    _____
Initials  Initials  Initials

## GUARANTOR AGREEMENT TO PROMISSORY NOTE COVENANTS

Each of the undersigned individually agree(s) to those covenants set forth in Section 4 of this Note that are applicable to the undersigned as Guarantor and agrees to be bound by the provisions of Section 13 of this Note.

Date: February 5, 2019

Robert C. Sullivan

Blanca T. Sullivan

X
John R. Bondon, Individually

PARROT PROPERTIES, INC.

X By:
John R. Bondon, President

SOUTH SIDE INVESTMENT COMPANY

X By:
John R. Bondon, President

ROBBA PROPERTIES L.L.C.

X By:
John R. Bondon, Manager

## GUARANTOR ACKNOWLEDGMENT FOR PROMISSORY NOTE

STATE OF MISSOURI

COUNTY OF Jackson        : SS.

On the 5th day of February in the year 2019 before me, the undersigned, a notary public in and for said state, personally appeared Robert C. Sullivan personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he (she) executed the same, and that by his (her) signature on the instrument, the individual, or other person upon behalf of which the individual acted, executed the instrument.

KENDRA SMITH
Notary Public - Notary Seal
STATE OF MISSOURI
Jackson County
My Commission Expires July 30, 2022
Commission # 14748644

15

Notary Public

Initials    Initials    Initials

STATE OF MISSOURI
COUNTY OF Jackson            : SS.

On the 5th day of February in the year 2019 before me, the undersigned, a notary public in and for said state, personally appeared Bianca T. Sullivan personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he (she) executed the same, and that by his (her) signature on the instrument, the individual, or other person upon behalf of which the individual acted, executed the instrument.

KENDRA SMITH
Notary Public - Notary Seal
STATE OF MISSOURI
Jackson County
My Commission Expires July 30, 2022
Commission # 14748644

Notary Public

STATE OF MISSOURI
COUNTY OF Jackson            : SS.

On the 5th day of February in the year 2019 before me, the undersigned, a notary public in and for said state, personally appeared John R. Bondon personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he (she) executed the same, and that by his (her) signature on the instrument, the individual, or other person upon behalf of which the individual acted, executed the instrument.

KENDRA SMITH
Notary Public - Notary Seal
STATE OF MISSOURI
Jackson County
My Commission Expires July 30, 2022
Commission # 14748644

Notary Public

STATE OF MISSOURI
COUNTY OF Jackson            : SS.

On the 5th day of February in the year 2019 before me, the undersigned, a notary public in and for said state, personally appeared John R. Bondon personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he (she) executed the same in his (her) capacity as President of Parrot Properties, Inc., and that by his (her) signature on the instrument, the individual, or other person upon behalf of which the individual acted, executed the instrument.

KENDRA SMITH
Notary Public - Notary Seal
STATE OF MISSOURI
Jackson County
My Commission Expires July 30, 2022
Commission # 14748644

Notary Public

16

Initials    Initials    Initials

STATE OF MISSOURI

COUNTY OF Jackson                    : SS.

    On the 5th day of February in the year 2019 before me, the undersigned, a notary public in and for said state, personally appeared John R. Bondon personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he (she) executed the same in his (her) capacity as President of South Side Investment Company and that by his (her) signature on the instrument, the individual, or other person upon behalf of which the individual acted, executed the instrument.

                                                  Notary Public

STATE OF MISSOURI

COUNTY OF Jackson                    : SS.

    On the 5th day of February in the year 2019 before me, the undersigned, a notary public in and for said state, personally appeared John R. Bondon personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he (she) executed the same in his (her) capacity as Manager of ROBBA Properties L.L.C. and that by his (her) signature on the instrument, the individual, or other person upon behalf of which the individual acted, executed the instrument.

                                                  Notary Public

> KENDRA SMITH
> Notary Public - Notary Seal
> STATE OF MISSOURI
> Jackson County
> My Commission Expires July 30, 2022
> Commission # 14748644

17

Initials    Initials    Initials

ALLONGE TO REVOLVING PROMISSORY NOTE, DATED FEBRUARY 5, 2019 ISSUED BY
SULLIVAN LAW L.L.C.
TO COUNSEL FINANCIAL HOLDINGS LLC

NOTICE: THIS NOTE IS SUBJECT TO A SECURITY INTEREST GRANTED BY COUNSEL FINANCIAL
HOLDINGS LLC, TO BANK OF AMERICA, N.A. PURSUANT TO A SECURITY AGREEMENT, DATED
SEPTEMBER 17, 2009, AMONG SUCH PARTIES AND CERTAIN OTHER PARTIES, AS AMENDED,
SUPPLEMENTED, REPLACED, RESTATED OR OTHERWISE MODIFIED FROM TIME TO TIME.

18

Initials    Initials    Initials

# EXHIBIT B

## GUARANTY OF PAYMENT AND PERFORMANCE

**THIS GUARANTY** ("Guaranty") from **Robert C. Sullivan, individually and Bianca T. Sullivan, individually,** both with a principal residence address at 3004 S.W. Coachlight Place, Lee's Summit MO 64081, **John R. Bondon,** individually, with a principal residence address at 11303 View High Drive, Kansas City, MO 64131, **Parrot Properties, Inc.,** a Missouri corporation having a principal place of business at 3675 South Noland Road, Suite 115, Independence, MO 64055, **South Side Investment Company,** a Missouri corporation having a principal place of business at 3675 South Noland Road, Suite 115, Independence, MO 64055 and **ROBBA Properties L.L.C.,** a Missouri limited liability company having a principal place of business at 11303 View High Drive, Kansas City, MO 64131 (each a "Guarantor" and collectively the "Guarantors") to **COUNSEL FINANCIAL HOLDINGS LLC,** a Delaware limited liability company with a place of business at 6400 Main Street, Suite 120, Williamsville, NY 14221 ("Lender").

### WITNESSETH:

**WHEREAS,** Sullivan Law L.L.C. ("Borrower") on the date hereof, has executed and delivered to Lender that certain Revolving Promissory Note in the principal amount of $4,500,000 as the same may be amended, renewed, increased or replaced from time to time ("Note") pursuant to which Lender is extending certain credit facilities (collectively the "Credit Facilities") to Borrower; and

**WHEREAS,** Lender is unwilling to extend the Credit Facilities to Borrower unless it receives this Guaranty; and

**WHEREAS,** each Guarantor is willing to execute and deliver this Guaranty to Lender in order to induce Lender to extend the Credit Facilities and each Guarantor has approved the form and substance of each and all of the documents relating to the Credit Facilities including the Revolving Promissory Note, the Security Agreement as herein defined and all certifications, agreements, letters and other documents executed with respect to the Credit Facilities.

**NOW, THEREFORE,** in order to induce Lender to extend the Credit Facilities to Borrower and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, each Guarantor agrees as follows with Lender:

### ARTICLE 1
### REPRESENTATIONS AND WARRANTIES OF GUARANTORS

Each Guarantor hereby represents and warrants to Lender (with respect to himself, herself or itself and not any other Guarantor) that:

**Section 1.1**    **Capacity of Guarantors.** Such Guarantor:

(A)    has the capacity to enter into this Guaranty; and

(B)    has his or her principal residence or its primary office at the address set forth in the first paragraph of this Guaranty.

**Section 1.2**    **No Violation of Restrictions.** Neither the execution and delivery of this Guaranty, the consummation of the transactions contemplated hereby nor the fulfillment of or compliance with the provisions of this Guaranty will conflict with or result in a breach of any of the terms, covenants, conditions or provisions of any agreement, judgment or order to which such Guarantor is a party or by which such Guarantor is bound, or will constitute a default under any of the foregoing, or result in the creation or imposition of any lien of any nature whatsoever.

19

Initials    Initials    Initials

**Section 1.3**    **Compliance with Law**. Such Guarantor is not in violation of any law, ordinance, governmental rule, regulation, order or judgment to which such Guarantor may be subject which is likely to materially affect the financial condition of such Guarantor.

**Section 1.4**    **Financial Statements and Other Information**. The financial statements and any other information submitted by such Guarantor to Lender fairly represent the financial condition as of the date of each statement and there has been no material adverse change in the financial condition of such Guarantor since the date of the respective statements submitted to Lender.

**Section 1.5**    **Solvency of Guarantors and Borrower**. Such Guarantor's assets exceed his, her or its liabilities (without in any way limiting any obligation that any Guarantor may have to maintain a specified minimum net worth). Such Guarantor has made an appropriate financial investigation of Borrower and has determined that Borrower is solvent at the time of execution of this Guaranty.

### ARTICLE 2
### COVENANTS AND AGREEMENTS

**Section 2.1**    **Guaranty of Payment and Performance**. Each Guarantor irrevocably, absolutely and unconditionally (and jointly and severally if there is more than one Guarantor) guarantees to Lender, the punctual payment and performance of the Obligations as hereafter defined.

"Obligations" means all the present and future monetary and other obligations of Borrower to Lender, of whatever nature or character, and whether absolute or contingent, arising under the Note and all of the other Loan Documents, including, without limitation any obligation of Borrower to pay any principal, interest, fee, charge, cost or expense under the Loan Documents, whether or not any such amounts arise or are accrued after the commencement of any bankruptcy or other insolvency proceeding and whether or not allowed as a claim in any such proceeding.

"Loan Documents" means collectively (a) the Note, (b) the Security Agreement, dated on or about the date hereof, from Borrower and each Guarantor to Lender ("Security Agreement"), (c) each other security agreement, assignment, mortgage, document, instrument, letter and certificate that has been or is hereafter executed and delivered in connection with any of the foregoing and (d) each amendment, increase, extension, amendment and restatement or replacement of any of the foregoing.

**Section 2.2**    **Obligations Unconditional**. This Guaranty shall remain in full force and effect until the Obligations are irrevocably paid in full and the Loan Documents are terminated, irrespective of any interruptions in the business relationships of Borrower or any Guarantor with Lender. No Guarantor's obligation hereunder shall be affected, modified or impaired by any state of facts or the happening from time to time of any event, including, without limitation, any of the following, whether or not with notice to or the consent of such Guarantor or any other Guarantor:

(A)    The invalidity, irregularity, illegality or unenforceability of, or any defect in, any Loan Document or any collateral security for the Credit Facilities or any Guaranty (collectively, the "Collateral"), including, without limitation, the Collateral under the Security Agreement, or the failure to perfect any security interest in or assignment of any of the Collateral, or the amendment, release or termination of any such security interest or assignment.

(B)    Any present or future law or order of any government (de jure or de facto) or of any agency thereof purporting to reduce the Obligations or amend or otherwise affect any Loan Document or any other obligation of Borrower or any other obligor under the Loan Documents or any other terms of payment.

(C)    The waiver, compromise, settlement, release or termination of any or all of the obligations, covenants or agreements of Borrower under any Loan Document, of any Guarantor under any Loan Document, of any other guarantor

20

of the Credit Facilities or any part thereof, or of any other party who has given collateral as security for the payment of the Credit Facilities or any part thereof.

(D)     The failure to give notice to any Guarantor of the occurrence of an event of default under any Loan Document.

(E)     The loss, release, sale, exchange, surrender or other change in any Collateral.

(F)     The extension of the time for payment or performance or renewal of any of the Obligations.

(G)     The modification or amendment (whether material or otherwise) of any obligation, covenant or agreement set forth in any Loan Document.

(H)     The performance of, or the omission to perform, any of the actions referred to in any Loan Document.

(I)     Any failure, omission or delay on the part of Lender to enforce, assert or exercise any right, power or remedy conferred on Lender in any Loan Document.

(J)     The voluntary or involuntary liquidation, dissolution, sale or other disposition of all or substantially all the assets, marshaling of assets and liabilities, receivership, insolvency, bankruptcy, assignment for the benefit of creditors, reorganization, arrangement, composition with creditors or readjustment of, or other similar proceedings affecting, any Guarantor or Borrower or any of their respective assets, or any allegation or contest of the validity of any Loan Document.

(K)     The default or failure of any Guarantor to fully perform any obligation set forth in this Guaranty.

(L)     Any event or action that would, in the absence of this paragraph, result in the release or discharge of any Guarantor from the performance or observance of any obligation, covenant or agreement contained in this Guaranty (other than the irrevocable payment in full of the Obligations or a written release provided by Lender to such Guarantor).

(M)     Any other circumstances which might otherwise constitute a legal or equitable discharge or defense of a surety or a guarantor.

## Section 2.3     Waivers by Guarantors.

(A) Each Guarantor waives any and all rights that are or may become available to such Guarantor by statute or otherwise to require Lender to (i) proceed against Borrower; (ii) proceed against or exhaust any security held from Borrower; or (iii) pursue any other remedy in Lender's power whatsoever. Lender may, at its election, exercise any right or remedy it may have against each Guarantor or any Collateral now or hereafter held by or for the benefit of Lender including, without limitation, the right to foreclose upon any such Collateral by judicial or nonjudicial sale, without affecting or impairing in any way the liability of any Guarantor hereunder except to the extent the Obligations may thereby be paid and performed, even though any rights which any Guarantor may have or otherwise might obtain by subrogation against others might be diminished or destroyed. Each Guarantor acknowledges that any such exercise of a right or remedy with respect to Collateral may result in a loss, in part or whole, of Lender's right to collect from Borrower any deficiency that may remain after any such exercise of such a right or remedy and that, where such a loss occurs, each Guarantor will also suffer a loss of any rights and remedies, arising in law or equity, which such Guarantor may have to collect any amount from Borrower; and each Guarantor agrees to remain bound notwithstanding any such loss. Each Guarantor waives all rights and defenses arising out of an election of remedies by Lender, even though that election of remedies, such as a nonjudicial foreclosure with respect to any Collateral, has destroyed each Guarantor's right of subrogation and reimbursement against Borrower by the operation of law or otherwise. Only the net proceeds from any such foreclosure, after deduction of all costs and expenses authorized to be deducted pursuant to the documents under which such

21

Initials     Initials     Initials

Collateral is held or by law, shall be applied against the Obligations. Lender may at its discretion purchase all or any part of such Collateral so sold or offered for sale for its own account and may apply against the amount bid therefor all or any part of the Obligations for which such Collateral is held; and in such case, only that portion of the Obligations so applied, after deduction of all costs and expenses authorized to be deducted by law or pursuant to the documents under which such Collateral is held, shall be applied against the Obligations. Each Guarantor waives any defense arising out of the absence, impairment or loss of any right to reimbursement or subrogation or other right or remedy of such Guarantor against Borrower or any such Collateral, whether resulting from the election by Lender to exercise any right or remedy it may have against any person, any defect in, failure of, or loss or absence of priority with respect to Lender's interest in such Collateral, or otherwise. In the event that any foreclosure sale is deemed to be not commercially reasonable, each Guarantor waives any right that he, she or it may have to have any portion of the Obligations discharged except to the extent of the amount actually bid and received by Lender at any such sale. Lender shall not be required to institute or prosecute proceedings to recover any deficiency as a condition of payment or performance hereunder or enforcement hereof.

(B) **Waiver of Notices and Demands**. Each Guarantor waives all presentments, demands for performance, notices of nonperformance, protests, notices of protest, notices of dishonor, notices of default, and notices of acceptance of this Guaranty and of the existence, creation or incurring of new or additional Obligations. At the option of Lender, each Guarantor may be joined in any action or proceeding commenced by Lender against Borrower in connection with or based upon the Obligations or any Collateral and recovery may be had against such Guarantor in such action or proceeding, without any requirement that Lender first assert, prosecute or exhaust any remedy or claim against Borrower. Without limiting the foregoing, each Guarantor acknowledges that repeated and successive demands may be made and payments or performance made hereunder in response to such demands as and when, from time to time, Borrower may default in payments or performance of the Obligations. Notwithstanding any such performance hereunder, this Guaranty shall remain in full force and effect and shall apply to any and all subsequent defaults by Borrower in payment or performance of the Obligations.

(C) **Waiver of Defenses**. Each Guarantor waives any defense arising by reason of any disability or defense of Borrower or by reason of the cessation from any cause whatsoever of the liability of Borrower. Each Guarantor waives any setoff, defense or counterclaim which Borrower or such Guarantor may have or claim to have against Lender.

(D) **Real Property Waivers**. Each Guarantor waives all rights and defenses that such Guarantor may have because Borrower's debt, or any guaranty thereof, is secured by real property, including but not limited to any life insurance. This means, among other things: (i) that Lender may collect from any Guarantor without first foreclosing on any real property; and (ii) if Lender forecloses on any real property Collateral: (A) the amount of the debt may be reduced only by the price for which that Collateral is sold at the foreclosure sale, even if the Collateral is worth more than the sale price, and (B) Lender may collect from each Guarantor even if Lender, by foreclosing on the real property Collateral, has destroyed any right such Guarantor may have to collect from Borrower. This is an unconditional and irrevocable waiver of any rights and defenses that any Guarantor may have because Borrower's debt or any guaranty is secured by real property.

(E) **No Waiver; Remedies**. In addition to, and not in limitation of the waivers, no failure on the part of Lender to exercise, and no delay in exercising, any right hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right thereunder preclude any other or further exercise thereof or the exercise of any other right. The remedies herein provided are cumulative and not exclusive of any remedies provided by law.

(F) **Guarantors' Understanding With Respect To Waivers**. Each Guarantor warrants and agrees that each of the waivers set forth above is made with such Guarantor's full knowledge of its significance and consequences, and that under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any of such waivers is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law.

22

Initials        Initials        Initials

**Section 2.4     Nature of Guaranty**. This Guaranty is a guaranty of payment and not of collection and each Guarantor hereby waive the right to require that any action be brought first against Borrower, any other Guarantor or any other party, or to require any security, or to require that resort be made to any security or to any balance of any deposit account or credit on the books of Lender in favor of Borrower or of any Guarantor.

**Section 2.5     Continuation of Guaranty**. Each Guarantor further agrees that the obligations hereunder shall continue to be effective or reinstated, as the case may be, if at any time payment of all or any part thereof of the Credit Facilities is rescinded or must otherwise be restored by Lender upon the bankruptcy or reorganization of Borrower, any Guarantor or otherwise.

**Section 2.6     Subordination of Debt**. Each Guarantor hereby subordinates any and all indebtedness of Borrower now or hereafter owed to such Guarantor to all indebtedness of Borrower to Lender and agree with Lender that, from and after the date whereon Lender notifies such Guarantor that an event of default under one or more of the Loan Documents has occurred and is continuing, such Guarantor shall not demand or accept any payment from Borrower of any such indebtedness, shall not claim any offset or other reduction of such Guarantor's obligations hereunder because of any such indebtedness and shall not take any action to obtain any interest in any of the security described in and encumbered by the Loan Documents; provided, however, that, if Lender so requests, such indebtedness shall be collected, enforced and received by such Guarantor as trustee for Lender and paid over to Lender on account of the indebtedness of the Borrower to Lender, but without reducing or affecting in any manner the liability of any Guarantor under the other provisions of this Guaranty except to the extent the principal amount of such outstanding indebtedness shall have been reduced by such payment.

**Section 2.7     Financial Statements and Other Information**. Each Guarantor agrees to deliver to Lender (A) on or before April 15 of each year, personal financial statements and information applicable to such Guarantor on Lender's standard form or other form acceptable to Lender and (B) copies of such Guarantor's annual federal tax return to be delivered on the sooner of (i) three days after filing or (ii) October 15 of each year for, as applicable, the immediately preceding fiscal or calendar year. Each Guarantor agrees to promptly deliver to Lender from time to time any additional documentation or information reasonable requested by Lender that relates to the business or assets of such Guarantor.

**Section 2.8     Transfer of Interest**. Except as expressly permitted pursuant to the Loan Documents, each Guarantor agree not to make or permit to be made, by voluntary or involuntary means, any transfer of the interest of such Guarantor in Borrower, without first obtaining the prior written consent of Lender.

**Section 2.9     Compliance with Note Covenants**. Each Guarantor shall comply with all covenants applicable to such Guarantor that are set forth in the Note. Any Guarantor that acts on behalf of Borrower has the fiduciary obligations described in the Note with respect to Net Fees and Expenses as defined in the Note.

## ARTICLE 3
## EVENTS OF DEFAULT

**Section 3.1     Events of Default Defined**. An "Event of Default" shall exist if any of the following events occurs and is continuing:

(A)     Any Guarantor fails to perform or observe any covenant contained herein.

(B)     Any warranty, representation or other statement by or on behalf of any Guarantor contained in this Guaranty or in any Loan Document is false or misleading in any material respect when made.

(C)     A receiver, liquidator or trustee of any Guarantor or any of his, her or its property is appointed by court order, or any party named as a Guarantor is adjudicated bankrupt or insolvent or any of his, her or its property is sequestered by

23

Initials        Initials        Initials

court order and such order remains in effect for more than sixty (60) days, or a petition is filed against any Guarantor under any bankruptcy, reorganization, arrangement, insolvency, readjustment of debt, dissolution or liquidation law of any jurisdiction, whether now or hereafter in effect, and is not dismissed within ninety (90) days of such filing.

(D)     Any Guarantor files a bankruptcy petition or seeks relief under any provision of any reorganization, arrangement, insolvency, readjustment of debt, dissolution or liquidation law of any jurisdiction, whether now or hereafter in effect, or consents to the filing of any petition against it under any such law.

(E)     Any Guarantor makes an assignment for the benefit of creditors or admits in writing inability to pay debts generally as they become due, or consents to the appointment of a receiver, trustee or liquidator of all or any part of his, her or its property.

(F)     The occurrence of an Event of Default under the Note or any other Loan Document.

**Section 3.2      Remedies on Default**. If an Event of Default exists, Lender may proceed to enforce the provisions hereof and to exercise any other rights, powers and remedies available to Lender without prior written notice to any Guarantor.

**Section 3.3      Waiver and Notice**.

(A)     No remedy herein conferred upon or reserved to Lender is intended to be exclusive of any other available remedy or remedies, but each and every such remedy shall be cumulative and shall be in addition to every other remedy given under this Guaranty now or hereafter existing at law or in equity or by statute.

(B)     No delay or omission to exercise any right or power accruing upon the occurrence of any Event of Default shall impair any such right or power or shall be construed to be a waiver thereof, but any such right or power may be exercised from time to time and as often as may be deemed expedient.

(C)     In order to entitle Lender to exercise any remedy reserved to it in this Guaranty, it shall not be necessary to give any notice, other than such notice as may be expressly required in this Guaranty.

(D)     No waiver, amendment, release or modification of this Guaranty shall be established by conduct, custom or course of dealing.

## ARTICLE 4
## MISCELLANEOUS

**Section 4.1      Construction**. If this Guaranty is executed by two or more parties, they shall be jointly and severally liable hereunder and the term "Guarantors" whenever used herein shall be construed to refer to each of the parties in the same manner and with the same effect as if each party had signed a separate guaranty.

**Section 4.2      Governing Law**. This Guaranty shall be governed by and construed, interpreted and enforced in accordance with the internal laws of the State of New York, without regard to principles of conflicts of law or to the laws of any other jurisdiction.

**Section 4.3      Successors and Assigns**. This Guaranty shall inure to the benefit of and be binding upon the heirs, administrators, successors and assigns of each of the parties hereto.

**Section 4.4      Notices**. Any notice required or permitted to be given hereunder must be in writing and delivered or transmitted to a party at the address or any fax number for such party set forth at the head of this Guaranty, or to such

24

Initials     Initials     Initials

other address or fax number as such party may designate in writing as provided herein for the purpose of receiving notices hereunder. Any such notice to a party is effective if by personal delivery, upon such delivery; if, by nationally recognized overnight courier, on the next business day after delivery to such courier; if by fax transmission, upon receipt by the sender of an electronic confirmation of a successful transmission; and otherwise upon receipt of such notice by such party.

Section 4.5    Entire Agreement. This Guaranty and the Loan Documents constitute the entire understanding between Borrower, each Guarantor and Lender and to the extent that any writings not signed by Lender or oral statements or conversations at any time made or had are inconsistent with the provisions of this Guaranty or the other Loan Documents, the same shall be null and void.

Section 4.6    Amendments. No amendment, change, modification, alteration or termination of this Guaranty shall be made except upon the written consent of Lender and any Guarantor to be bound thereby.

Section 4.7    Assignment. This Guaranty is assignable by Lender in whole or in part in conjunction with an assignment of the Loan Documents and any assignment hereof or any transfer or assignment of the Loan Documents or portions thereof shall operate to vest in any such assignee the rights and powers, in whole or in part, as appropriate, herein conferred upon and granted to Lender.

Section 4.8    Partial Invalidity. Whenever possible, each provision of this Guaranty shall be interpreted in such manner as to be effective and valid under applicable law. If, however, any such provision shall be prohibited by or invalid under such law, it shall be deemed modified to conform to the minimum requirements of such law, or, if for any reason it is not deemed so modified, it shall be prohibited or invalid only to the extent of such prohibition or invalidity without the remainder thereof or any other such provision being prohibited or invalid.

Section 4.9    SUBMISSION TO JURISDICTION. EACH GUARANTOR HEREBY IRREVOCABLY AND UNCONDITIONALLY AGREES THAT ANY SUIT, ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS GUARANTY SHALL BE BROUGHT ONLY IN THE SUPREME COURT OF THE STATE OF NEW YORK LOCATED IN THE COUNTY OF ERIE, WHICH SHALL BE DEEMED TO BE THE COURT OF SOLE AND EXCLUSIVE VENUE FOR THE BRINGING OF ANY LEGAL ACTION, AND EACH GUARANTOR WAIVES ANY RIGHT TO OBJECT TO JURISDICTION WITHIN THE FOREGOING FORUM BY LENDER. NOTHING CONTAINED HEREIN SHALL PREVENT LENDER FROM BRINGING ANY SUIT, ACTION OR PROCEEDING OR EXERCISING ANY RIGHTS AGAINST ANY COLLATERAL, AGAINST ANY GUARANTOR PERSONALLY OR AGAINST ANY PROPERTY OF ANY GUARANTOR, WITHIN ANY OTHER JURISDICTION, AND THE INITIATION OF SUCH SUIT, ACTION OR PROCEEDING OR TAKING OF SUCH ACTION IN ANY SUCH OTHER JURISDICTION SHALL IN NO EVENT CONSTITUTE A WAIVER OF THE AGREEMENTS CONTAINED HEREIN WITH RESPECT TO THE LAWS OF THE STATE OF NEW YORK GOVERNING THE RIGHTS AND OBLIGATIONS OF THE PARTIES HERETO OR THE AGREEMENT OF EACH GUARANTOR TO SUBMIT TO PERSONAL JURISDICTION WITHIN THE STATE OF NEW YORK AND COUNTY OF ERIE.

Section 4.10    WAIVER OF JURY TRIAL. EACH GUARANTOR HEREBY EXPRESSLY WAIVES ANY AND ALL RIGHTS HE, SHE OR IT MAY HAVE TO TRIAL BY JURY OF ANY CLAIM, DEMAND, ACTION, OR CAUSE OF ACTION (A) ARISING UNDER THIS GUARANTY OR ANY OTHER INSTRUMENT, DOCUMENT, OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH OR (B) IN ANY WAY CONNECTED WITH OR RELATED OR INCIDENTAL TO THE DEALINGS OF THE PARTIES HERETO OR ANY OF THEM WITH RESPECT TO THIS GUARANTY OR ANY OTHER INSTRUMENT, DOCUMENT, OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH, OR THE TRANSACTIONS RELATED HERETO OR THERETO, IN EACH CASE WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN

25

Initials        Initials        Initials

CONTRACT OR TORT OR OTHERWISE, AND EACH GUARANTOR HEREBY AGREES AND CONSENTS THAT ANY SUCH CLAIM, DEMAND, ACTION, OR CAUSE OF ACTION SHALL BE DECIDED BY COURT TRIAL WITHOUT A JURY, AND LENDER MAY FILE AN ORIGINAL COUNTERPART OF A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF EACH GUARANTOR'S CONSENT TO THE WAIVER OF HIS, HER OR ITS RIGHT TO TRIAL BY JURY. EACH GUARANTOR REPRESENTS AND WARRANTS THAT HE, SHE OR IT HAS REVIEWED THIS JURY WAIVER PROVISION WITH HIS, HER OR ITS LEGAL COUNSEL, AND HAVE MADE THIS WAIVER KNOWINGLY AND VOLUNTARILY.

Section 4.11    SERVICE OF PROCESS. PROCESS ON ANY GUARANTOR IN ANY SUIT, ACTION OR PROCEEDING ARISING OUT OF THIS GUARANTY WILL BE DEEMED TO HAVE BEEN GIVEN WHEN GIVEN IN ANY ONE OF THE FOLLOWING WAYS: (A) PERSONALLY DELIVERED, (B) TWO BUSINESS DAYS AFTER DEPOSITED WITH A NATIONALLY RECOGNIZED OVERNIGHT COURIER, ALL CHARGES PREPAID, THAT ROUTINELY ISSUES RECEIPTS, OR (C) 4 BUSINESS DAYS AFTER SENT BY CERTIFIED MAIL BY THE UNITED STATES POSTAL SERVICE, POSTAGE PREPAID, RETURN RECEIPT REQUESTED, ADDRESSED TO EACH GUARANTOR AT THE APPLICABLE ADDRESS FOR SUCH GUARANTOR .SET FORTH AT THE BEGINNING OF THIS GUARANTY. Such service on a Guarantor shall be deemed in every respect effective service of process upon such Guarantor and shall, to the fullest extent permitted by law, be taken and held to be valid personal service upon such Guarantor. Nothing in this Section shall affect Lender's right to serve process in any other manner permitted by law. Any Guarantor may add additional addresses or change an address for purposes of service of process by giving 10 days' prior written notice of such change to Lender.

Section 4.12    **Unlimited Guaranty.**  This Guaranty is unlimited in amount.

IN WITNESS WHEREOF, each Guarantor has executed this Guaranty as of the day and year set forth.

Dated: February 5, 2019

Robert C. Sullivan, Individually

John R. Bondon, Individually

Bianca T. Sullivan, Individually

PARROT PROPERTIES, INC.
By: John R. Bondon, President

SOUTH SIDE INVESTMENT COMPANY
By: John R. Bondon, President

ROBRA PROPERTIES L.L.C.
By: John R. Bondon, Manager

26

Initials    Initials    Initials

## ACKNOWLEDGMENTS (FOR GUARANTY)

STATE OF MISSOURI
:SS.
COUNTY OF Jackson

    On the 5th day of February in the year 2019 before me, the undersigned, a notary public in and for said state, personally appeared Robert C. Sullivan personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he (she) executed the same, and that by his (her) signature on the instrument, the individual, or other person upon behalf of which the individual acted, executed the instrument.

**KENDRA SMITH**
**Notary Public - Notary Seal**
**STATE OF MISSOURI**
**Jackson County**
**My Commission Expires July 30, 2022**
**Commission # 14748644**

_____
Notary Public

STATE OF MISSOURI
:SS.
COUNTY OF Jackson

    On the 5th day of February in the year 2019 before me, the undersigned, a notary public in and for said state, personally appeared John R. Bondon personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he (she) executed the same, and that by his (her) signature on the instrument, the individual, or other person upon behalf of which the individual acted, executed the instrument.

**KENDRA SMITH**
**Notary Public - Notary Seal**
**STATE OF MISSOURI**
**Jackson County**
**My Commission Expires July 30, 2022**
**Commission # 14748644**

_____
Notary Public

STATE OF MISSOURI
:SS.
COUNTY OF Jackson

    On the 5th day of February in the year 2019 before me, the undersigned, a notary public in and for said state, personally appeared Bianca T. Sullivan personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he (she) executed the same, and that by his (her) signature on the instrument, the individual, or other person upon behalf of which the individual acted, executed the instrument.

**KENDRA SMITH**
**Notary Public - Notary Seal**
**STATE OF MISSOURI**
**Jackson County**
**My Commission Expires July 30, 2022**
**Commission # 14748644**

_____
Notary Public

27

Initials    Initials    Initials

STATE OF MISSOURI
COUNTY OF Jackson
: SS.

On the 5th day of February in the year 2019 before me, the undersigned, a notary public in and for said state, personally appeared John R. Bondon personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he (she) executed the same in his (her) capacity as President of Parrot Properties, Inc., and that by his (her) signature on the instrument, the individual, or other person upon behalf of which the individual acted, executed the instrument.

KENDRA SMITH
Notary Public - Notary Seal
STATE OF MISSOURI
Jackson County
My Commission Expires July 30, 2022
Commission # 14748644

Notary Public

STATE OF MISSOURI
COUNTY OF Jackson
: SS.

On the 5th day of February in the year 2019 before me, the undersigned, a notary public in and for said state, personally appeared John R. Bondon personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he (she) executed the same in his (her) capacity as President of South Side Investment Company and that by his (her) signature on the instrument, the individual, or other person upon behalf of which the individual acted, executed the instrument.

Notary Public - Notary Seal
STATE OF MISSOURI
Jackson County
My Commission Expires July 30, 2022
Commission # 14748644

Notary Public

STATE OF MISSOURI
COUNTY OF Jackson
: SS.

On the 5th day of February in the year 2019 before me, the undersigned, a notary public in and for said state, personally appeared John R. Bondon personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he (she) executed the same in his (her) capacity as Manager of ROBBA Properties L.L.C. and that by his (her) signature on the instrument, the individual, or other person upon behalf of which the individual acted, executed the instrument.

KENDRA SMITH
Notary Public - Notary Seal
STATE OF MISSOURI
Jackson County
My Commission Expires July 30, 2022
Commission # 14748644

Notary Public

28

Initials   Initials   Initials

# EXHIBIT C

## AMENDMENT NO 1. TO
## REVOLVING PROMISSORY NOTE

THIS AMENDMENT (this "Amendment"), dated July __, 2019, amends the terms of that certain Revolving Promissory Note dated as of February __, 2019 in the maximum principal amount of Four Million Five Hundred Thousand and 00/100 Dollars ($4,500,000.00) (as amended the "Note") executed by SULLIVAN LAW L.L.C., a limited liability company organized under Missouri law having an office located at 1600 Baltimore Ave., Kansas City, MO 64108 (the "Borrower") in favor of COUNSEL FINANCIAL HOLDINGS LLC, a Delaware limited liability company with a place of business at 6400 Main Street, Suite 120, Williamsville, New York 14221 (together with its successors and/or assigns the "Lender") and that certain Guaranty of Payment and Performance (the "Guaranty Agreement") executed by ROBERT C. SULLIVAN, individually and BIANCA T SULLIVAN, individually, both with a principal residence address at 3004 S.W. Coachlight Place, Lee's Summit MO 64081, JOHN R. BONDON, individually, with a principal residence address at 11303 View High Drive, Kansas City, MO 64131, PARROTT PROPERTIES, INC., a Missouri corporation having a principal place of business at 3675 South Noland Road, Suite 115, Independence, MO 64055, SOUTH SIDE INVESTMENT COMPANY, a Missouri corporation having a principal place of business at 3675 South Noland Road, Suite 115, Independence, MO 64055 and ROBBA PROPERTIES, L.L.C., a Missouri limited liability company having a principal place of business at 11303 View High Drive, Kansas City, MO 64131 (each a "Guarantor" and collectively the "Guarantors") in favor of Lender. Capitalized terms, unless otherwise defined herein, have the meanings ascribed to them in the Note.

### RECITALS

WHEREAS, Borrower executed and delivered the Note in favor of Lender; and

WHEREAS, Guarantors executed and delivered the Guaranty Agreement in favor of Lender as security for the Note; and

WHEREAS, the Borrower and Lender wish to amend the Note as set forth herein; and

WHEREAS, in connection with the amendment the parties hereto wish to amend and reaffirm the Guaranty Agreement.

NOW, THEREFORE, for good and valuable consideration, receipt of which is hereby acknowledged, Borrower and Lender hereby agree as follows:

1.      As of the date hereof, the first paragraph of the Note is deleted in its entirety and replaced with the following:

"For value received, **SULLIVAN LAW L.L.C.,** a limited liability company organized under Missouri law ("**Borrower**"), having its principal office located at 1600 Baltimore Ave., Kansas City, MO 64108, promises to pay to the order of **COUNSEL FINANCIAL II LLC,** a Delaware limited liability company ("**Lender**"), in lawful money of the United States and immediately available funds, any of the offices of Lender at 6400 Main Street, Suite 120, Williamsville, NY 14221 the principal amount of $5,000,000 or the Outstanding Principal Amount (as defined below) if less, together with all interest, fees,

charges and costs and expenses payable under this Note, all at the times and in the manner provided in Section 2 below."

2.    As of the date hereof, the definition of Maximum Amount in the Note is hereby deleted and replaced with the following:

"a.    "Maximum Amount" means $5,000,000, US currency, as reduced in accordance with Section 2 (b) (ii) of this Note

3.    Any references in the Note and/or Existing Loan Documents to "$4,500,000" are hereby deleted and replaced with $5,000,000.

4.    In the event of any conflict or inconsistency between the Note and this Amendment, this Amendment shall control with respect to the provisions amended herein.

5.    This Amendment may not be changed or terminated except by an agreement in writing signed by the Borrower, Guarantors and the Lender.

6.    This Amendment shall be binding upon the parties hereto and their respective successors and assigns and shall inure to the benefit of the Lender, and it successors and assigns.

7.    If any term, covenant or condition of this Amendment shall be held to be invalid, illegal or unenforceable in any respect, this Amendment shall be construed without such provision.

8.    This Amendment may be executed in any number of counterparts, by different parties hereto in separate counterparts and by facsimile signature, each of which, when so executed and delivered, shall be deemed to be an original and all of which taken together shall constitute but one and the same agreement.

9.    The Note, except as specifically modified hereby, and the Guaranty Agreement shall each remain in full force and effect and the Borrower and each Guarantor hereby reaffirms all of their obligations under the Note, the Guaranty Agreement and any other documents executed and delivered by the Borrower and each Guarantor to the Lender in connection therewith. Additionally, the Borrower and each Guarantor hereby affirms that there have been no material changes in their assets and/or Collateral that secures the Note. This Amendment is limited precisely as written and shall not be deemed to (a) be a consent to or a waiver of any other term or condition of the Note, or (b) prejudice any right or rights which the Lender may now have or may have in the future under or in connection with the Note. Whenever the Note is referred to in the Note or in any of the instruments, agreements or other documents or papers executed and delivered in connection therewith, it shall be deemed to mean the Note as modified by this Amendment.

10.     Borrower and each Guarantor hereby further reaffirm their obligations under Section 4(f) of the Note with respect to "Restriction on Additional Indebtedness" and specifically confirm and agree that there is no additional indebtedness on real property owned by Borrower or any Guarantor.

11.     This Amendment and the acts and obligations of the parties hereunder shall be construed and interpreted in accordance with the laws of the State of New York without regard to the principles of conflicts of laws.

[Remainder of page intentionally left blank]

IN WITNESS WHEREOF, the parties have executed this Amendment as of the day and year first above written.

**LENDER:**

**COUNSEL FINANCIAL HOLDINGS LLC**

By: _____
Name: Paul A. Cody
Title: President

**BORROWER:**

**SULLIVAN LAW L.L.C.**

By: _____
Robert C. Sullivan, Managing Member

**GUARANTORS:**

_____
Robert C. Sullivan

_____
Bianca T. Sullivan

_____
John R. Bondon

PARROT PROPERTIES, INC.

By: _____
John R. Bondon, President

SOUTH SIDE INVESTMENT COMPANY

By: _____
John R. Bondon, President

ROBRA PROPERTIES, L.L.C.

By: _____
John R. Bondon, Manager

STATE OF NEW YORK
COUNTY OF ERIE

On the 19th day of July in the year 2019 before me, the undersigned, a notary public in and for said state, personally appeared Paul A Cru personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity as President of Counsel Financial Holdings LLC and that by his signature on the instrument, the entity upon behalf of which the individual acted, executed the instrument.

> CORRIE GOLLER
> NOTARY PUBLIC, STATE OF NEW YORK
> No. 01GO6246530
> Qualified in Erie County 2023
> My Commission Expires July 25, 2023

*Corrie Goller*
Notary Public

STATE OF MISSOURI
COUNTY OF Jackson

On the 19th day of July in the year 2019 before me, the undersigned, a notary public in and for said state, personally appeared Robert C. Sullivan personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity as Managing Member of Sullivan Law L.L.C., and that by his signature on the instrument, the entity upon behalf of which the individual acted, executed the instrument.

> KENDRA SMITH
> Notary Public - Notary Seal
> STATE OF MISSOURI
> Jackson County
> My Commission Expires July 30, 2022
> Commission # 14748644

*Kendra Smith*
Notary Public

STATE OF MISSOURI
COUNTY OF Jackson.

On the 19th day of July in the year 2019 before me, the undersigned, a notary public in and for said state, personally appeared Robert C. Sullivan personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he (she) executed the same, and that by his (her) signature on the instrument, the individual, or other person upon behalf of which the individual acted, executed the instrument.

> KENDRA SMITH
> Notary Public - Notary Seal
> STATE OF MISSOURI
> Jackson County
> My Commission Expires July 30, 2022
> Commission # 14748644

*Kendra Smith*
Notary Public

STATE OF MISSOURI
COUNTY OF Jackson

On the 19th day of ___July___ in the year 2019 before me, the undersigned, a notary public in and for said state, personally appeared John R. Bondon personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he (she) executed the same, and that by his (her) signature on the instrument, the individual, or other person upon behalf of which the individual acted, executed the instrument.

KENDRA SMITH
Notary Public - Notary Seal
STATE OF MISSOURI
Jackson County
My Commission Expires July 30, 2022
Commission # 14748644

_____
Notary Public


STATE OF MISSOURI
COUNTY OF Jackson

On the 19th day of ___July___ in the year 2019 before me, the undersigned, a notary public in and for said state, personally appeared Bianca T. Sullivan personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he (she) executed the same, and that by his (her) signature on the instrument, the individual, or other person upon behalf of which the individual acted, executed the instrument.

KENDRA SMITH
Notary Public - Notary Seal
STATE OF MISSOURI
Jackson County
My Commission Expires July 30, 2022
Commission # 14748644

_____
Notary Public


STATE OF MISSOURI
COUNTY OF Jackson

On the 19th day of ___July___ in the year 2019 before me, the undersigned, a notary public in and for said state, personally appeared John R. Bondon personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he (she) executed the same in his (her) capacity as President of Parrot Properties, Inc., and that by his (her) signature on the instrument, the individual, or other person upon behalf of which the individual acted, executed the instrument.

KENDRA SMITH
Notary Public - Notary Seal
STATE OF MISSOURI
Jackson County
My Commission Expires July 30, 2022
Commission # 14748644

_____
Notary Public

STATE OF MISSOURI
COUNTY OF Jackson

On the 19th day of July in the year 2019 before me, the undersigned, a notary public in and for said state, personally appeared John R. Bondon personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he (she) executed the same in his (her) capacity as President of South Side Investment Company and that by his (her) signature on the instrument, the individual, or other person upon behalf of which the individual acted, executed the instrument.

KENDRA SMITH
Notary Public - Notary Seal
STATE OF MISSOURI
Jackson County
My Commission Expires July 30, 2022
Commission # 14748644

Notary Public

STATE OF MISSOURI
COUNTY OF Jackson

On the 19th day of July in the year 2019 before me, the undersigned, a notary public in and for said state, personally appeared John R. Bondon personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he (she) executed the same in his (her) capacity as Manager of ROBBA Properties L.L.C. and that by his (her) signature on the instrument, the individual, or other person upon behalf of which the individual acted, executed the instrument.

KENDRA SMITH
Notary Public - Notary Seal
STATE OF MISSOURI
Jackson County
My Commission Expires July 30, 2022
Commission # 14748644

Notary Public

# EXHIBIT D

## AMENDMENT NO 2. TO
## REVOLVING PROMISSORY NOTE

THIS AMENDMENT (this "Amendment"), dated September 23, 2019, amends the terms of that certain Revolving Promissory Note dated as of February 5, 2019 in the maximum principal amount of Four Million Five Hundred Thousand and 00/100 Dollars ($4,500,000.00) increased to $5,000,000 as of July 19, 2019 (as amended the "Note") executed by SULLIVAN LAW L.L.C., a limited liability company organized under Missouri law having an office located at 1600 Baltimore Ave., Kansas City, MO 64108 (the "Borrower") in favor of COUNSEL FINANCIAL HOLDINGS LLC, a Delaware limited liability company with a place of business at 6400 Main Street, Suite 120, Williamsville, New York 14221 (together with its successors and/or assigns the "Lender") and that certain Guaranty of Payment and Performance (the "Guaranty Agreement") executed by ROBERT C. SULLIVAN, individually and BIANCA T SULLIVAN, individually, both with a principal residence address at 3004 S.W. Coachlight Place, Lee's Summit MO 64081, JOHN R. BONDON, individually, with a principal residence address at 11303 View High Drive, Kansas City, MO 64131, PARROTT PROPERTIES, INC., a Missouri corporation having a principal place of business at 3675 South Noland Road, Suite 115, Independence, MO 64055, SOUTH SIDE INVESTMENT COMPANY, a Missouri corporation having a principal place of business at 3675 South Noland Road, Suite 115, Independence, MO 64055 and ROBBA PROPERTIES, L.L.C., a Missouri limited liability company having a principal place of business at 11303 View High Drive, Kansas City, MO 64131 (each a "Guarantor" and collectively the "Guarantors") in favor of Lender. Capitalized terms, unless otherwise defined herein, have the meanings ascribed to them in the Note.

### RECITALS

WHEREAS, Borrower executed and delivered the Note in favor of Lender; and

WHEREAS, Guarantors executed and delivered the Guaranty Agreement in favor of Lender as security for the Note; and.

WHEREAS, the Borrower and Lender wish to amend the Note as set forth herein; and

WHEREAS, in connection with the amendment the parties hereto wish to amend and reaffirm the Guaranty Agreement.

NOW, THEREFORE, for good and valuable consideration, receipt of which is hereby acknowledged, Borrower and Lender hereby agree as follows:

1.    As of the date hereof, the first paragraph of the Note is deleted in its entirety and replaced with the following:

"For value received, **SULLIVAN LAW L.L.C.**, a limited liability company organized under Missouri law ("**Borrower**"), having its principal office located at 1600 Baltimore Ave., Kansas City, MO 64108, promises to pay to the order of **COUNSEL FINANCIAL HOLDINGS LLC**, a Delaware limited liability company ("**Lender**"), in lawful money of the United States and immediately available funds, any of the offices of Lender at 6400 Main Street, Suite 120, Williamsville, NY 14221 the principal amount of $5,250,000 or the Outstanding Principal Amount (as defined below) if less, together with

all interest, fees, charges and costs and expenses payable under this Note, all at the times and in the manner provided in Section 2 below."

2.    As of the date hereof, the definition of Maximum Amount in the Note is hereby deleted and replaced with the following:

"a.    "Maximum Amount" means $5,250,000, US currency, as reduced in accordance with Section 2 (b) (ii) of this Note

3.    Any references in the Note and/or Existing Loan Documents to "$5,000,000" are hereby deleted and replaced with $5,250,000.

4.    In the event of any conflict or inconsistency between the Note and this Amendment, this Amendment shall control with respect to the provisions amended herein.

5.    This Amendment may not be changed or terminated except by an agreement in writing signed by the Borrower, Guarantors and the Lender.

6.    This Amendment shall be binding upon the parties hereto and their respective successors and assigns and shall inure to the benefit of the Lender, and it successors and assigns.

7.    If any term, covenant or condition of this Amendment shall be held to be invalid, illegal or unenforceable in any respect, this Amendment shall be construed without such provision.

8.    This Amendment may be executed in any number of counterparts, by different parties hereto in separate counterparts and by facsimile signature, each of which, when so executed and delivered, shall be deemed to be an original and all of which taken together shall constitute but one and the same agreement.

9.    The Note, except as specifically modified hereby, and the Guaranty Agreement shall each remain in full force and effect and the Borrower and each Guarantor hereby reaffirms all of their obligations under the Note, the Guaranty Agreement and any other documents executed and delivered by the Borrower and each Guarantor to the Lender in connection therewith. Additionally, the Borrower and each Guarantor hereby affirms that there have been no material changes in their assets and/or Collateral that secures the Note. This Amendment is limited precisely as written and shall not be deemed to (a) be a consent to or a waiver of any other term or condition of the Note, or (b) prejudice any right or rights which the Lender may now have or may have in the future under or in connection with the Note. Whenever the Note is referred to in the Note or in any of the instruments, agreements or other documents or papers executed and delivered in connection therewith, it shall be deemed to mean the Note as modified by this Amendment.

10. Borrower and each Guarantor hereby further reaffirm their obligations under Section 4(f) of the Note with respect to "Restriction on Additional Indebtedness" and specifically confirm and agree that there is no additional indebtedness on real property owned by Borrower or any Guarantor.

11. This Amendment and the acts and obligations of the parties hereunder shall be construed and interpreted in accordance with the laws of the State of New York without regard to the principles of conflicts of laws.

[Remainder of page intentionally left blank]

IN WITNESS WHEREOF, the parties have executed this Amendment as of the day and year first above written.

LENDER:

COUNSEL FINANCIAL HOLDINGS LLC

By: _____
Name: Megan B. Payne
Title: Chief Operating Officer

BORROWER:

SULLIVAN LAW L.L.C.

By: _____
Robert C. Sullivan, Managing Member

GUARANTORS:

_____
Robert C. Sullivan

_____
Bianca T. Sullivan

_____
John R. Bondon

PARROT PROPERTIES, INC.

By: _____
John R. Bondon, President

SOUTH SIDE INVESTMENT COMPANY

By: _____
John R. Bondon, President

ROBBA PROPERTIES, L.L.C.

By: _____
John R. Bondon, Manager

STATE OF NEW YORK
COUNTY OF ERIE

On the 23rd day of September in the year 2019 before me, the undersigned, a notary public in and for said state, personally appeared *Megan Palyu* personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity as _COO_ of Counsel Financial Holdings LLC and that by his signature on the instrument, the entity upon behalf of which the individual acted, executed the instrument.

*Corrie Goller*
Notary Public

CORRIE GOLLER
NOTARY PUBLIC, STATE OF NEW YORK
No. 01GO6245530
Qualified in Erie County
My Commission Expires July 26, 2023

STATE OF MISSOURI
COUNTY OF Jackson

On the 23 day of September in the year 2019 before me, the undersigned, a notary public in and for said state, personally appeared Robert C. Sullivan personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity as Managing Member of Sullivan Law L.L.C., and that by his signature on the instrument, the entity upon behalf of which the individual acted, executed the instrument.

*Kendra Smith*
Notary Public

KENDRA SMITH
Notary Public - Notary Seal
STATE OF MISSOURI
Jackson County
My Commission Expires July 30, 2022
Commission # 14748644

STATE OF MISSOURI
COUNTY OF Jackson

On the 23 day of September in the year 2019 before me, the undersigned, a notary public in and for said state, personally appeared Robert C. Sullivan personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he (she) executed the same, and that by his (her) signature on the instrument, the individual, or other person upon behalf of which the individual acted, executed the instrument.

*Kendra Smith*
Notary Public

KENDRA SMITH
Notary Public - Notary Seal
STATE OF MISSOURI
Jackson County
My Commission Expires July 30, 2022
Commission # 14748644

STATE OF MISSOURI
COUNTY OF Jackson

On the 23 day of September in tire year 2019 before me, the undersigned, a notary public in and for said state, personally appeared John R. Bondon personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he (she) executed the same, and that by his (her) signature on the instrument, the individual, or other person upon behalf of which the individual acted, executed the instrument.

KENDRA SMITH
Notary Public - Notary Seal
STATE OF MISSOURI
Jackson County
My Commission Expires July 30, 2022
Commission # 14748644

Notary Public

STATE OF MISSOURI
COUNTY OF Jackson

On the 23 day of September n tire year 2019 before me, the undersigned, a notary public in and for said state, personally appeared Bianca T. Sullivan personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he (she) executed the same, and that by his (her) signature on the instrument, the individual, or other person upon behalf of which the individual acted, executed the instrument.

KENDRA SMITH
Notary Public - Notary Seal
STATE OF MISSOURI
Jackson County
My Commission Expires July 30, 2022
Commission # 14748644

Notary Public

STATE OF MISSOURI
COUNTY OF Jackson

On the 23 day of September in tire year 2019 before me, the undersigned, a notary public in and for said state, personally appeared John R. Bondon personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he (she) executed the same, and that by his (her) signature on the instrument, the individual, or other person upon behalf of which the individual acted, executed the instrument.

KENDRA SMITH
Notary Public - Notary Seal
STATE OF MISSOURI
Jackson County
My Commission Expires July 30, 2022
Commission # 14748644

Notary Public

STATE OF MISSOURI
COUNTY OF Jackson

      On the 23 day of September in tire year 2019 before me, a public in and for said state, personally appeared John R. Bondon personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he (she) executed the same in his (her) capacity as President of South Side Investment Company and that by his (her) signature on the instrument, the individual, or other person upon behalf of which the individual acted, executed the instrument.

            **KENDRA SMITH**
        Notary Public - Notary Seal
          STATE OF MISSOURI
           Jackson County
   My Commission Expires July 30, 2022
        Commission # 14748644

Notary Public

STATE OF MISSOURI
COUNTY OF Jackson

      On the 23 day of September in tire year 2019 before me, the undersigned, a notary public in and for said state, personally appeared John R. Bondon personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he (she) executed the same in his (her) capacity as Manager of ROBBA Properties L.L.C. and that by his (her) signature on the instrument, the individual, or other person upon behalf of which the individual acted, executed the instrument.

          **KENDRA SMITH**
       Notary Public - Notary Seal
        STATE OF MISSOURI
         Jackson County
   My Commission Expires July 30, 2022
       Commission # 14748644

Notary Public

NYSCEF DOC. NO. 8

RECEIVED NYSCEF: 10/21/2020

# EXHIBIT E

## AMENDMENT NO 3. TO
## REVOLVING PROMISSORY NOTE

THIS AMENDMENT (this "Amendment"), dated October __, 2019, amends the terms of that certain Revolving Promissory Note dated as of February 5, 2019 in the maximum principal amount of Four Million Five Hundred Thousand and 00/100 Dollars ($4,500,000.00) increased to $5,000,000 as of July 19, 2019 and further increased to $5,250,000 on September 23, 2019 (as amended the "Note") executed by SULLIVAN LAW L.L.C., a limited liability company organized under Missouri law having an office located at 1600 Baltimore Ave., Kansas City, MO 64108 (the "Borrower") in favor of COUNSEL FINANCIAL HOLDINGS LLC, a Delaware limited liability company with a place of business at 6400 Main Street, Suite 120, Williamsville, New York 14221 (together with its successors and/or assigns the "Lender") and that certain Guaranty of Payment and Performance (the "Guaranty Agreement") executed by ROBERT C. SULLIVAN, individually and BIANCA T SULLIVAN, individually, both with a principal residence address at 3004 S.W. Coachlight Place, Lee's Summit MO 64081, JOHN R. BONDON, individually, with a principal residence address at 11303 View High Drive, Kansas City, MO 64131, PARROTT PROPERTIES, INC., a Missouri corporation having a principal place of business at 3675 South Noland Road, Suite 115, Independence, MO 64055, SOUTH SIDE INVESTMENT COMPANY, a Missouri corporation having a principal place of business at 3675 South Noland Road, Suite 115, Independence, MO 64055 and ROBBA PROPERTIES, L.L.C., a Missouri limited liability company having a principal place of business at 11303 View High Drive, Kansas City, MO 64131 (each a "Guarantor" and collectively the "Guarantors") in favor of Lender. Capitalized terms, unless otherwise defined herein, have the meanings ascribed to them in the Note.

### RECITALS

WHEREAS, Borrower executed and delivered the Note in favor of Lender; and

WHEREAS, Guarantors executed and delivered the Guaranty Agreement in favor of Lender as security for the Note; and

WHEREAS, the Borrower and Lender wish to amend the Note as set forth herein; and

WHEREAS, in connection with the amendment the parties hereto wish to amend and reaffirm the Guaranty Agreement.

NOW, THEREFORE, for good and valuable consideration, receipt of which is hereby acknowledged, Borrower and Lender hereby agree as follows:

1. As of the date hereof, the first paragraph of the Note is deleted in its entirety and replaced with the following:

"For value received, **SULLIVAN LAW L.L.C.**, a limited liability company organized under Missouri law (**"Borrower"**), having its principal office located at 1600 Baltimore Ave., Kansas City, MO 64108, promises to pay to the order of **COUNSEL FINANCIAL HOLDINGS LLC**, a Delaware limited liability company (**"Lender"**), in lawful money of the United States and immediately available funds, any of the offices of Lender at 6400 Main Street, Suite 120, Williamsville, NY 14221 the principal amount of $5,500,000 or the Outstanding Principal Amount (as defined below) if less, together with

all interest, fees, charges and costs and expenses payable under this Note, all at the times and in the manner provided in Section 2 below."

2.      As of the date hereof, the definition of Maximum Amount in the Note is hereby deleted and replaced with the following:

"a.      "Maximum Amount" means $5,500,000, US currency, as reduced in accordance with Section 2 (b) (ii) of this Note

3.      Any references in the Note and/or Existing Loan Documents to "$5,250,000" are hereby deleted and replaced with $5,500,000.

4.      In the event of any conflict or inconsistency between the Note and this Amendment, this Amendment shall control with respect to the provisions amended herein.

5.      This Amendment may not be changed or terminated except by an agreement in writing signed by the Borrower, Guarantors and the Lender.

6.      This Amendment shall be binding upon the parties hereto and their respective successors and assigns and shall inure to the benefit of the Lender, and it successors and assigns.

7.      If any term, covenant or condition of this Amendment shall be held to be invalid, illegal or unenforceable in any respect, this Amendment shall be construed without such provision.

8.      This Amendment may be executed in any number of counterparts, by different parties hereto in separate counterparts and by facsimile signature, each of which, when so executed and delivered, shall be deemed to be an original and all of which taken together shall constitute but one and the same agreement.

9.      The Note, except as specifically modified hereby, and the Guaranty Agreement shall each remain in full force and effect and the Borrower and each Guarantor hereby reaffirms all of their obligations under the Note, the Guaranty Agreement and any other documents executed and delivered by the Borrower and each Guarantor to the Lender in connection therewith. Additionally, the Borrower and each Guarantor hereby affirms that there have been no material changes in their assets and/or Collateral that secures the Note. This Amendment is limited precisely as written and shall not be deemed to (a) be a consent to or a waiver of any other term or condition of the Note, or (b) prejudice any right or rights which the Lender may now have or may have in the future under or in connection with the Note. Whenever the Note is referred to in the Note or in any of the instruments, agreements or other documents or papers executed and delivered in connection therewith, it shall be deemed to mean the Note as modified by this Amendment.

10. Borrower and each Guarantor hereby further reaffirm their obligations under Section 4(f) of the Note with respect to "Restriction on Additional Indebtedness" and specifically confirm and agree that there is no additional indebtedness on real property owned by Borrower or any Guarantor.

11. This Amendment and the acts and obligations of the parties hereunder shall be construed and interpreted in accordance with the laws of the State of New York without regard to the principles of conflicts of laws.

[Remainder of page intentionally left blank]

IN WITNESS WHEREOF, the parties have executed this Amendment as of the day and year first above written.

**LENDER:**

**COUNSEL FINANCIAL HOLDINGS LLC**

By: _____
Name: Megan B. Payne
Title: Chief Operating Officer

**BORROWER:**

**SULLIVAN LAW L.L.C.**

By: _____
Robert C. Sullivan, Managing Member

**GUARANTORS:**

_____
Robert C. Sullivan

_____
Bianca T. Sullivan

_____
John R. Bondon

**PARROT PROPERTIES, INC.**

By: _____
John R. Bondon, President

**SOUTH SIDE INVESTMENT COMPANY**

By: _____
John R. Bondon, President

**ROBBA PROPERTIES, L.L.C.**

By: _____
John R. Bondon, Manager

STATE OF NEW YORK
COUNTY OF ERIE

On the 24th day of October in the year 2019 before me, the undersigned, a notary public in and for said state, personally appeared _Megan Payne_ personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity as ___COO___ of Counsel Financial Holdings LLC and that by his signature on the instrument, the entity upon behalf of which the individual acted, executed the instrument.

_Corrie Goller_

Notary Public

CORRIE GOLLER
NOTARY PUBLIC, STATE OF NEW YORK
No. 01GO6245530
Qualified in Erie County
My Commission Expires July 25, 2023

STATE OF MISSOURI
COUNTY OF Jackson

On the 24th day of October in the year 2019 before me, the undersigned, a notary public in and for said state, personally appeared Robert C. Sullivan personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity as Managing Member of Sullivan Law L.L.C., and that by his signature on the instrument, the entity upon behalf of which the individual acted, executed the instrument.

KENDRA SMITH
Notary Public - Notary Seal
STATE OF MISSOURI
Jackson County
My Commission Expires July 30, 2022
Commission # 14748644

_Kendra Smith_
Notary Public

STATE OF MISSOURI
COUNTY OF Jackson

On the 24th day of October in the year 2019 before me, the undersigned, a notary public in and for said state, personally appeared Robert C. Sullivan personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he (she) executed the same, and that by his (her) signature on the instrument, the individual, or other person upon behalf of which the individual acted, executed the instrument.

KENDRA SMITH
Notary Public - Notary Seal
STATE OF MISSOURI
Jackson County
My Commission Expires July 30, 2022
Commission # 14748644

_Kendra Smith_
Notary Public

STATE OF MISSOURI
COUNTY OF Jackson

       On the 24th day of October in the year 2019 before me, the undersigned, a notary public in and for said state, personally appeared John R. Bondon personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he (she) executed the same, and that by his (her) signature on the instrument, the individual, or other person upon behalf of which the individual acted, executed the instrument.

> KENDRA SMITH
> Notary Public - Notary Seal
> STATE OF MISSOURI
> Jackson County
> My Commission Expires July 30, 2022
> Commission # 14748644

Notary Public

STATE OF MISSOURI
COUNTY OF Jackson

       On the 24th day of October in the year 2019 before me, the undersigned, a notary public in and for said state, personally appeared Bianca T. Sullivan personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he (she) executed the same, and that by his (her) signature on the instrument, the individual, or other person upon behalf of which the individual acted, executed the instrument.

> KENDRA SMITH
> Notary Public - Notary Seal
> STATE OF MISSOURI
> Jackson County
> My Commission Expires July 30, 2022
> Commission # 14748644

Notary Public

STATE OF MISSOURI
COUNTY OF Jackson

       On the 24th day of October in the year 2019 before me, the undersigned, a notary public in and for said state, personally appeared John R. Bondon personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he (she) executed the same, and that by his (her) signature on the instrument, the individual, or other person upon behalf of which the individual acted, executed the instrument.

> KENDRA SMITH
> Notary Public - Notary Seal
> STATE OF MISSOURI
> Jackson County
> My Commission Expires July 30, 2022
> Commission # 14748644

Notary Public

STATE OF MISSOURI
COUNTY OF Jackson

On the <u>24th</u> day of October in the year 2019 before me, a public in and for said state, personally appeared John R. Bondon personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he (she) executed the same in his (her) capacity as President of South Side Investment Company and that by his (her) signature on the instrument, the individual, or other person upon behalf of which the individual acted, executed the instrument.

KENDRA SMITH
Notary Public – Notary Seal
STATE OF MISSOURI
Jackson County
My Commission Expires July 30, 2022
Commission # 14748644

Notary Public

STATE OF MISSOURI
COUNTY OF Jackson

On the 24th day of October in the year 2019 before me, the undersigned, a notary public in and for said state, personally appeared John R. Bondon personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he (she) executed the same in his (her) capacity as Manager of ROBBA Properties L.L.C. and that by his (her) signature on the instrument, the individual, or other person upon behalf of which the individual acted, executed the instrument.

KENDRA SMITH
Notary Public – Notary Seal
STATE OF MISSOURI
Jackson County
My Commission Expires July 30, 2022
Commission # 14748644

Notary Public

# EXHIBIT F

## AMENDMENT NO 4. TO
## REVOLVING PROMISSORY NOTE

THIS AMENDMENT (this "Amendment"), dated December __, 2019, amends the terms
of that certain Revolving Promissory Note dated as of February 5, 2019 in the maximum
principal amount of Four Million Five Hundred Thousand and 00/100 Dollars ($4,500,000.00)
increased to $5,000,000 as of July 19, 2019 and further increased to $5,250,000 on September
23, 2019 and further increased to $5,500,000 on October 24, 2019 (as amended the "Note")
executed by SULLIVAN LAW L.L.C., a limited liability company organized under Missouri law
having an office located at 1600 Baltimore Ave., Kansas City, MO 64108 (the "Borrower") in
favor of COUNSEL FINANCIAL HOLDINGS LLC, a Delaware limited liability company with
a place of business at 6400 Main Street, Suite 120, Williamsville, New York 14221 (together
with its successors and/or assigns the "Lender") and that certain Guaranty of Payment and
Performance (the "Guaranty Agreement") executed by ROBERT C. SULLIVAN, individually
and BIANCA T SULLIVAN, individually, both with a principal residence address at 3004 S.W.
Coachlight Place, Lee's Summit MO 64081, JOHN R. BONDON, individually, with a principal
residence address at 11303 View High Drive, Kansas City, MO 64131, PARROTT
PROPERTIES, INC., a Missouri corporation having a principal place of business at 3675 South
Noland Road, Suite 115, Independence, MO 64055, SOUTH SIDE INVESTMENT COMPANY,
a Missouri corporation having a principal place of business at 3675 South Noland Road, Suite
115, Independence, MO 64055 and ROBBA PROPERTIES, L.L.C., a Missouri limited liability
company having a principal place of business at 11303 View High Drive, Kansas City, MO
64131 (each a "Guarantor" and collectively the "Guarantors") in favor of Lender. Capitalized
terms, unless otherwise defined herein, have the meanings ascribed to them in the Note.

### RECITALS

WHEREAS, Borrower executed and delivered the Note in favor of Lender; and

WHEREAS, Guarantors executed and delivered the Guaranty Agreement in favor of
Lender as security for the Note; and

WHEREAS, the Borrower and Lender wish to amend the Note as set forth herein; and

WHEREAS, in connection with the amendment the parties hereto wish to amend and
reaffirm the Guaranty Agreement.

NOW, THEREFORE, for good and valuable consideration, receipt of which is hereby
acknowledged, Borrower and Lender hereby agree as follows:

1.      As of the date hereof, the first paragraph of the Note is deleted in its entirety and
replaced with the following:

"For value received, **SULLIVAN LAW L.L.C.,** a limited liability company organized
under Missouri law (**"Borrower"**), having its principal office located at 1600 Baltimore
Ave., Kansas City, MO 64108, promises to pay to the order of **COUNSEL FINANCIAL
HOLDINGS LLC,** a Delaware limited liability company (**"Lender"**), in lawful money
of the United States and immediately available funds, any of the offices of Lender at
6400 Main Street, Suite 120, Williamsville, NY 14221 the principal amount of
$6,000,000 or the Outstanding Principal Amount (as defined below) if less, together with

all interest, fees, charges and costs and expenses payable under this Note, all at the times and in the manner provided in Section 2 below."

2. As of the date hereof, the definition of Maximum Amount in the Note is hereby deleted and replaced with the following:

"a. "Maximum Amount" means $6,000,000, US currency, as reduced in accordance with Section 2 (b) (ii) of this Note

3. Any references in the Note and/or Existing Loan Documents to "$5,500,000" are hereby deleted and replaced with $6,000,000.

4. In the event of any conflict or inconsistency between the Note and this Amendment, this Amendment shall control with respect to the provisions amended herein.

5. This Amendment may not be changed or terminated except by an agreement in writing signed by the Borrower, Guarantors and the Lender.

6. This Amendment shall be binding upon the parties hereto and their respective successors and assigns and shall inure to the benefit of the Lender, and it successors and assigns.

7. If any term, covenant or condition of this Amendment shall be held to be invalid, illegal or unenforceable in any respect, this Amendment shall be construed without such provision.

8. This Amendment may be executed in any number of counterparts, by different parties hereto in separate counterparts and by facsimile signature, each of which, when so executed and delivered, shall be deemed to be an original and all of which taken together shall constitute but one and the same agreement.

9. The Note, except as specifically modified hereby, and the Guaranty Agreement shall each remain in full force and effect and the Borrower and each Guarantor hereby reaffirms all of their obligations under the Note, the Guaranty Agreement and any other documents executed and delivered by the Borrower and each Guarantor to the Lender in connection therewith. Additionally, the Borrower and each Guarantor hereby affirms that there have been no material changes in their assets and/or Collateral that secures the Note. This Amendment is limited precisely as written and shall not be deemed to (a) be a consent to or a waiver of any other term or condition of the Note, or (b) prejudice any right or rights which the Lender may now have or may have in the future under or in connection with the Note. Whenever the Note is referred to in the Note or in any of the instruments, agreements or other documents or papers executed and delivered in connection therewith, it shall be deemed to mean the Note as modified by this Amendment.

10.    Borrower and each Guarantor hereby further reaffirm their obligations under Section 4(f) of the Note with respect to "Restriction on Additional Indebtedness" and specifically confirm and agree that there is no additional indebtedness on real property owned by Borrower or any Guarantor.

11.    This Amendment and the acts and obligations of the parties hereunder shall be construed and interpreted in accordance with the laws of the State of New York without regard to the principles of conflicts of laws.

[Remainder of page intentionally left blank]

IN WITNESS WHEREOF, the parties have executed this Amendment as of the day and year first above written.

**LENDER:**

**COUNSEL FINANCIAL HOLDINGS LLC**

By: _____
Name: Megan B. Payne
Title: Chief Operating Officer

**BORROWER:**

**SULLIVAN LAW L.L.C.**

By: _____
Robert C. Sullivan, Managing Member

**GUARANTORS:**

_____
Robert C. Sullivan

_____
Bianca T. Sullivan

_____
John R. Bondon

**PARROT PROPERTIES, INC.**

By: _____
John R. Bondon, President

**SOUTH SIDE INVESTMENT COMPANY**

By: _____
John R. Bondon, President

**ROBRA PROPERTIES, L.L.C.**

By: _____
John R. Bondon, Manager

STATE OF NEW YORK
COUNTY OF ERIE

On the 11ᵗʰ day of December in the year 2019 before me, the undersigned, a notary public in and for said state, personally appeared Megan B. Payne personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity as COO of Counsel Financial Holdings LLC and that by his signature on the instrument, the entity upon behalf of which the individual acted, executed the instrument.

Notary Public

STATE OF MISSOURI
COUNTY OF Jackson

THOMAS D. OLIVIERI
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01OL4778252
Qualified in Erie County
Commission Expires February 28, 2022

On the 11th day of December in the year 2019 before me, the undersigned, a notary public in and for said state, personally appeared Robert C. Sullivan personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity as Managing Member of Sullivan Law L.L.C., and that by his signature on the instrument, the entity upon behalf of which the individual acted, executed the instrument.

KENDRA SMITH
Notary Public - Notary Seal
STATE OF MISSOURI
Jackson County
My Commission Expires July 30, 2022
Commission # 14748644

Notary Public

STATE OF MISSOURI
COUNTY OF Jackson

On the 11th day of December in the year 2019 before me, the undersigned, a notary public in and for said state, personally appeared Robert C. Sullivan personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he (she) executed the same, and that by his (her) signature on the instrument, the individual, or other person upon behalf of which the individual acted, executed the instrument.

KENDRA SMITH
Notary Public - Notary Seal
STATE OF MISSOURI
Jackson County
My Commission Expires July 30, 2022
Commission # 14748644

Notary Public

STATE OF MISSOURI
COUNTY OF Jackson

On the 11th day of December in the year 2019 before me, the undersigned, a notary public in and for said state, personally appeared John R. Bondon personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he (she) executed the same, and that by his (her) signature on the instrument, the individual, or other person upon behalf of which the individual acted, executed the instrument.

Notary Public

> KENDRA SMITH
> Notary Public - Notary Seal
> STATE OF MISSOURI
> Jackson County
> My Commission Expires July 30, 2022
> Commission # 14748644

STATE OF MISSOURI
COUNTY OF Jackson

On the 11th day of December in the year 2019 before me, the undersigned, a notary public in and for said state, personally appeared Bianca T. Sullivan personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he (she) executed the same, and that by his (her) signature on the instrument, the individual, or other person upon behalf of which the individual acted, executed the instrument.

> KENDRA SMITH
> Notary Public - Notary Seal
> STATE OF MISSOURI
> Jackson County
> My Commission Expires July 30, 2022
> Commission # 14748644

Notary Public

STATE OF MISSOURI
COUNTY OF Jackson

On the 11th day of December in the year 2019 before me, the undersigned, a notary public in and for said state, personally appeared John R. Bondon personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he (she) executed the same, and that by his (her) signature on the instrument, the individual, or other person upon behalf of which the individual acted, executed the instrument.

Notary Public

> KENDRA SMITH
> Notary Public - Notary Seal
> STATE OF MISSOURI
> Jackson County
> My Commission Expires July 30, 2022
> Commission # 14748644

STATE OF MISSOURI
COUNTY OF Jackson

On the 11th day of December in the year 2019 before me, a public in and for said state, personally appeared John R. Bondon personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he (she) executed the same in his (her) capacity as President of South Side Investment Company and that by his (her) signature on the instrument, the individual, or other person upon behalf of which the individual acted, executed the instrument.

KENDRA SMITH
Notary Public - Notary Seal
STATE OF MISSOURI
Jackson County
My Commission Expires July 30, 2022
Commission # 14748644

Notary Public

STATE OF MISSOURI
COUNTY OF Jackson

On the 11th day of December in the year 2019 before me, the undersigned, a notary public in and for said state, personally appeared John R. Bondon personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he (she) executed the same in his (her) capacity as Manager of ROBBA Properties L.L.C. and that by his (her) signature on the instrument, the individual, or other person upon behalf of which the individual acted, executed the instrument.

KENDRA SMITH
Notary Public - Notary Seal
STATE OF MISSOURI
Jackson County
My Commission Expires July 30, 2022
Commission # 14748644

Notary Public

# EXHIBIT G

**Counsel Financial Holdings, LLC**
6400 Main Street, Suite 120
Williamsville, NY 14221

| | |
|---|---|
| Statement date | 10/21/2020 |
| Loan ID: | 518 |
| Amortization Date | 3/1/2021 |
| Maturity Date | 2/1/2023 |
| Total Line of Credit | $6,000,000.00 |
| Current Interest Rate | 12.00% |
| Deferred Interest Rate | 6.00% |
| Default Interest Rate: | 24.00% |

**Sullivan Law, LLC**
1600 Baltimore Ave., Suite 200
Kansas City, MO 64108

| | |
|---|---|
| Principal Balance | $4,665,652.48 |
| Current Interest . | $119,180.04 |
| Current Fees - | $0.00 |
| Deferred Interest. | $508,154.26 |
| Past Due Interest and Fees | $482,354.16 |
| Total Balance Outstanding | $5,975,540.94 |

| Date | Transaction | Loan Principal | Deferred Loan Interest | Current Loan Interest & Late Fees | Fees Charged | Principal Payments | Interest/Fee Payments | Account Balance |
|---|---|---|---|---|---|---|---|---|
| 01/01/20 | Balance Brought Forward | 5,788,604.66 | 273,975.13 | 548,006.85 | 650,032.72 | 0.00 | 650,032.72 | $6,610,587.63 |
| 01/07/20 | Principal Borrowed | 75,355.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | $6,685,942.63 |
| 01/07/20 | Wire Transfer Fee | 0.00 | 0.00 | 0.00 | 30.00 | 0.00 | 0.00 | $6,685,972.63 |
| 01/07/20 | Payment (deducted from wire) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 30.00 | $6,685,942.63 |
| 01/10/20 | Principal Borrowed | 51,666.88 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | $6,737,609.31 |
| 01/10/20 | Interest Payment- to CF2 Line | 0.00 | 0.00 | 0.00 | 51,666.68 | 0.00 | 0.00 | $6,785,275.99 |
| 01/10/20 | Payment (deducted from wire) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 51,666.68 | $6,737,609.31 |
| 01/21/20 | Principal Borrowed | 75,985.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | $6,813,574.31 |
| 01/21/20 | Wire Transfer Fee | 0.00 | 0.00 | 0.00 | 30.00 | 0.00 | 0.00 | $6,813,604.31 |
| 01/21/20 | Payment (deducted from wire) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 30.00 | $6,813,574.31 |
| 01/31/20 | Principal Payment- Wire | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | $6,813,574.31 |
| 01/31/20 | Interest Calculated | 0.00 | 30,232.28 | 60,464.52 | 0.00 | 0.00 | 0.00 | $6,904,242.40 |
| 02/10/20 | Principal Borrowed | 51,666.68 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | $6,955,909.18 |
| 02/10/20 | Interest Payment- to CF2 Line | 0.00 | 0.00 | 0.00 | 51,666.68 | 0.00 | 0.00 | $6,048,275.86 |
| 02/10/20 | Payment (deducted from wire) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 51,666.68 | $6,955,909.18 |
| 02/12/20 | Principal Borrowed | 33,241.36 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | $6,079,847.22 |
| 02/12/20 | Wire Transfer Fee | 0.00 | 0.00 | 0.00 | 30.00 | 0.00 | 0.00 | $6,079,877.22 |
| 02/12/20 | Payment (deducted from wire) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 30.00 | $6,079,847.22 |
| 02/28/20 | Principal Borrowed | 84,855.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | $6,164,702.22 |
| 02/28/20 | Wire Transfer Fee | 0.00 | 0.00 | 0.00 | 30.00 | 0.00 | 0.00 | $6,164,732.22 |
| 02/28/20 | Payment (deducted from wire) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 30.00 | $6,164,702.22 |
| 02/29/20 | Interest Calculated | 0.00 | 20,031.15 | 40,062.30 | 0.00 | 0.00 | 0.00 | $6,224,795.67 |
| 03/10/20 | Principal Borrowed | 48,333.33 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | $6,273,129.00 |
| 03/10/20 | Interest Payment- to CF2 Line | 0.00 | 0.00 | 0.00 | 48,333.33 | 0.00 | 0.00 | $6,321,462.33 |
| 03/10/20 | Payment (deducted from wire) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 48,333.33 | $6,273,129.00 |
| 03/12/20 | Principal Borrowed | 63,730.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | $6,336,859.00 |
| 03/12/20 | Wire Transfer Fee | 0.00 | 0.00 | 0.00 | 30.00 | 0.00 | 0.00 | $6,336,889.00 |
| 03/12/20 | Payment (deducted from wire) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 30.00 | $6,336,859.00 |
| 03/23/20 | Principal Borrowed | 81,572.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | $6,418,431.00 |
| 03/23/20 | Wire Transfer Fee | 0.00 | 0.00 | 0.00 | 30.00 | 0.00 | 0.00 | $6,418,461.00 |
| 03/23/20 | Payment (deducted from wire) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 30.00 | $6,418,431.00 |
| 03/31/20 | Interest Calculated | 0.00 | 22,480.80 | 44,961.59 | 0.00 | 0.00 | 0.00 | $6,485,873.39 |
| 04/01/20 | Principal Borrowed | 44,730.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | $6,530,603.39 |
| 04/01/20 | Wire Transfer Fee | 0.00 | 0.00 | 0.00 | 30.00 | 0.00 | 0.00 | $6,530,633.39 |
| 04/01/20 | Payment (deducted from wire) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 30.00 | $6,530,603.39 |
| 04/07/20 | Principal Borrowed | 18,530.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | $6,549,133.39 |
| 04/07/20 | Wire Transfer Fee | 0.00 | 0.00 | 0.00 | 30.00 | 0.00 | 0.00 | $6,549,163.39 |
| 04/07/20 | Payment (deducted from wire) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 30.00 | $6,549,133.39 |
| 04/10/20 | Principal Borrowed | 51,666.67 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | $6,600,800.06 |
| 04/10/20 | Interest Payment- to CF2 Line | 0.00 | 0.00 | 0.00 | 51,666.67 | 0.00 | 0.00 | $6,652,466.73 |
| 04/10/20 | Payment (deducted from wire) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 51,666.67 | $6,600,800.06 |
| 04/22/20 | Principal Borrowed | 81,340.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | $6,682,140.06 |
| 04/22/20 | Wire Transfer Fee | 0.00 | 0.00 | 0.00 | 30.00 | 0.00 | 0.00 | $6,682,170.06 |
| 04/22/20 | Payment (deducted from wire) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 30.00 | $6,682,140.06 |
| 04/30/20 | Interest Calculated | 0.00 | 22,828.80 | 45,657.80 | 0.00 | 0.00 | 0.00 | $6,750,626.76 |
| 05/10/20 | Principal Borrowed | 50,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | $6,800,626.76 |
| 05/10/20 | Interest Payment- to CF2 Line | 0.00 | 0.00 | 0.00 | 50,000.00 | 0.00 | 0.00 | $6,850,626.76 |
| 05/10/20 | Payment (deducted from wire) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 50,000.00 | $6,800,626.76 |
| 05/26/20 | Principal Borrowed | 18,928.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | $6,819,554.76 |
| 05/26/20 | Wire Transfer Fee | 0.00 | 0.00 | 0.00 | 30.00 | 0.00 | 0.00 | $6,819,584.76 |
| 05/26/20 | Payment (deducted from wire) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 30.00 | $6,819,554.76 |
| 05/31/20 | Interest Calculated | 0.00 | 24,185.34 | 48,371.68 | 0.00 | 0.00 | 0.00 | $6,892,111.38 |
| 06/10/20 | Principal Borrowed | 51,666.67 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | $6,943,778.05 |
| 06/10/20 | Interest Payment- to CF2 Line | 0.00 | 0.00 | 0.00 | 51,666.67 | 0.00 | 0.00 | $6,995,444.72 |
| 06/10/20 | Payment (deducted from wire) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 51,666.67 | $6,943,778.05 |
| 06/30/20 | Interest Calculated | 0.00 | 23,735.10 | 47,470.19 | 0.00 | 0.00 | 0.00 | $6,014,983.34 |
| 07/01/20 | Interest Payment- Wire | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 250,000.00 | $6,764,983.34 |
| 07/15/20 | Interest Payment- Wire | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 201,444.44 | $6,563,538.90 |
| 07/31/20 | Interest Calculated | 0.00 | 24,606.35 | 49,212.70 | 0.00 | 0.00 | 0.00 | $6,637,357.95 |
| 08/10/20 | Principal Borrowed | 51,666.67 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | $6,689,024.62 |
| 08/10/20 | Interest Payment- to CF2 Line | 0.00 | 0.00 | 0.00 | 51,666.67 | 0.00 | 0.00 | $6,740,691.29 |
| 08/10/20 | Payment (deducted from wire) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 51,666.67 | $6,689,024.62 |
| 08/31/20 | Interest Calculated | 0.00 | 24,796.79 | 49,591.58 | 0.00 | 0.00 | 0.00 | $6,763,412.99 |
| 09/10/20 | Principal Borrowed | 51,666.67 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | $6,815,079.66 |
| 09/10/20 | Interest Payment- to CF2 Line | 0.00 | 0.00 | 0.00 | 51,666.67 | 0.00 | 0.00 | $6,866,745.34 |

**Counsel Financial Holdings, LLC**
6400 Main Street, Suite 120
Williamsville, NY 14221

| | |
|---|---|
| Statement date: | 10/21/2020 |
| Loan ID: | 518 |
| Amortization Date: | 3/4/2021 |
| Maturity Date | 2/1/2023 |
| Total Line of Credit: | $6,000,000.00 |
| Current Interest Rate | 12.00% |
| Deferred Interest Rate | 8.00% |
| Default Interest Rate | 24.90% |

**Sullivan Law, LLC**
1600 Baltimore Ave., Suite 200
Kansas City, MO 64108

| | |
|---|---|
| Principal Balance: | $4,865,852.48 |
| Current Interest | $119,180.04 |
| Current Fees | $0.00 |
| Deferred Interest | $608,154.26 |
| Past Due Interest and Fees | $482,354.16 |
| Total Balance Outstanding | $5,975,540.94 |

| Date | Transaction | Loan Principal | Deferred Loan Interest | Current Loan Interest & Late Fees | Fees Charged | Principal Payments | Interest/Fee Payments | Account Balance |
|---|---|---|---|---|---|---|---|---|
| 09/10/20 | Payment (deducted from wire) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | $1,866.67 | $5,815,078.67 |
| 09/30/20 | Interest Calculated | 0.00 | 24,251.76 | 48,503.52 | 0.00 | 0.00 | 0.00 | $5,887,833.95 |
| 10/21/20 | Interest Calculated | 0.00 | 17,030.48 | 70,675.51 | 0.00 | 0.00 | 0.00 | $5,975,540.94 |
| | | $6,775,184.39 | $608,154.26 | $1,052,978.65 | $1,058,666.09 | $1,909,331.91 | $1,518,110.53 | $5,975,540.95 |

*Pursuant to the terms of your loan, the interest rate may vary from month-to-month based on the current LIBOR rate

Deferred Closing Fee Due
Upon Payoff                   $135,000.00